NO. 07-10-0095-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 23, 2011

_____

WILLIAM CHARLES PHILLIPS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 106TH DISTRICT COURT OF LYNN COUNTY;

NO. 04-2700; HONORABLE CARTER T. SCHILDKNECHT, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, William Charles Phillips, was convicted by a jury of the offense of possession of a controlled substance (methamphetamine) in an amount of four grams or more but less than 200 grams with intent to deliver[1] and sentenced to thirty-five years

---

[1] *See* Tex. Health & Safety Code Ann. §§ 481.112(a) & (d) (West 2010). This offense is a first degree felony punishable by confinement in the Institutional Division of the Texas Department of Criminal Justice

confinement. In three issues, he asserts the trial court erred by admitting evidence of two extraneous offenses: (1) possession of drug paraphernalia (a syringe containing a clear liquid discovered in his sock prior to incarceration) and (2) the subsequent possession of a controlled substance. By his third issue, Appellant asserts the evidence is legally and factually insufficient to sustain his conviction. We affirm.

## Background

On January 23, 2004, DPS Trooper Jeff Ashburn stopped a vehicle being driven by Jimmy Thomas. Appellant was a passenger at the time. While the stop occurred in Lubbock County, the vehicle had just come from Lynn County. After making contact with Thomas, Ashburn detected an odor of marijuana. Thomas was then detained and a small amount of methamphetamine was found in his jeans. Thomas eventually admitted that he was smoking marijuana and that there would be evidence of that fact in the vehicle's ashtray. When he searched the vehicle, Ashburn found a marijuana cigarette in the car's ashtray, a syringe in the center console, and, by the right front passenger seat, a black leather pouch containing numerous small bags of methamphetamine and a set of digital scales. Underneath the passenger seat, he also found a large plastic bag containing methamphetamine. Thomas and Appellant were arrested and transported to the Lubbock County Jail. At the jail, Ashburn was given a

for life or for any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.32 (West 2003).

2

syringe found in Appellant's sock[2] which he identified as the same type of syringe found in the console of Thomas's vehicle.

Following their arrest, Thomas gave Sergeant Mike Ybarra, a DPS Narcotics Officer, a key to a van parked at the residence of Appellant's father in Wilson, Lynn County, Texas. Ybarra subsequently went to the residence where he met Vicki Graves, Appellant's girlfriend. Appellant's father arrived shortly thereafter and consented to a search of his residence and the van. During the search, Ybarra found methamphetamine in a small, clear plastic bag in a desk drawer in the living room of the residence and two glass containers containing a clear liquid in a small refrigerator in the van. He identified the clear liquid as containing methamphetamine.[3]

On May 17, 2004, a Lynn County Grand Jury returned an indictment against Appellant alleging that he intentionally and knowingly possessed, with intent to deliver, a controlled substance (methamphetamine) having an aggregate weight of four grams or more but less than 200 grams. The indictment also alleged the lesser included offense of possession of a controlled substance.[4]

---

[2]Deputy Cory Lucas of the Lubbock County Sheriff's Office testified that, when Appellant was searched before entering the jail, he found a syringe filled with a clear liquid located in Appellant's sock.

[3]Scott Williams, DPS forensic chemist, testified at trial that, of the substances found on Thomas and in his vehicle, .26 grams of methamphetamine were taken from Thomas and 21.87 grams of methamphetamine were found on the passenger side of the vehicle. Of the substances found at the residence of Appellant's father and in the van, Williams identified 4.12 grams of liquid methamphetamine from the van and a little over three grams of powdered methamphetamine from the residence.

[4]*See* Tex. Health & Safety Code Ann. § 481.115(d) (West 2010). This offense is a second degree felony punishable by confinement in the Institutional Division of the Texas Department of Criminal Justice for

3

At trial, Thomas testified pursuant to an immunity agreement.[5]  He testified that, on January 22, 2004, he received a call from Appellant asking him to work on a vehicle at his father's residence in Wilson.  Thomas picked up Appellant and they drove to the residence, where Appellant gave him a key to the van to check the ignition switch.  In the van, Thomas observed materials used in the manufacture of methamphetamine.  He also observed Appellant in the van preparing to make methamphetamine.  The next day, on January 23, 2004, Thomas returned to the residence and parked near the van. He heard someone moving around in the van.  When Appellant emerged from the van, Thomas saw smoke coming out of the van and concluded Appellant was "gassing" the methamphetamine.[6]  Thomas then agreed to take Appellant to Lubbock.  While on the way to Lubbock, Thomas and Appellant smoked marijuana.  Shortly after crossing into Lubbock County from Lynn County, they were stopped by Trooper Ashburn.  Thomas admitted to Ashburn that they had been smoking marijuana and told the trooper that, with the exception of a burnt marijuana cigarette in the car's ashtray, there was no other contraband in the vehicle.  He then gave Ashburn permission to search his vehicle. While Ashburn was conducting the search, Appellant told Thomas:  "Look, if you'll just take the rap for this, I'll bail you out."  Thomas testified that none of the

---

any term of not more than 20 years or less than 2 years and a fine not to exceed $10,000.  Tex. Penal Code Ann. § 12.34 (West 2003).

[5]The immunity agreement granted Thomas immunity regarding anything he testified to at trial.  Prior to testifying, Thomas was convicted in Lubbock County of possession of a controlled substance with intent to deliver based upon the events of January 23, 2004.

[6]"Gassing" is a process whereby a gas, typically anhydrous ammonia, is introduced into a liquid containing methamphetamine in order to cause the methamphetamine to separate from the liquid itself.

4

methamphetamine found in his vehicle, the van, or the residence owned by Appellant's father belonged to him.

Deputy Danny Randall of the Lynn County Sheriff's Office testified that he went to Appellant's father's residence on July 12, 2004, to serve a felony warrant on Appellant. When he entered the residence, Appellant was sitting on a bed in the living room beside a coffee table. Deputy Pete Vallejo testified that there was a white powdery substance on the coffee table that later tested positive for methamphetamine. Vallejo also testified that, inside the house, he found two plastic bags containing a leafy substance, a glass pipe, six syringes, and two propane torches typically used by drug users to light methamphetamine and smoke it from a glass pipe.

After the prosecution rested, the trial judge instructed the jury that there had been some testimony regarding the offense of possession of a controlled substance in a correctional facility. The trial judge instructed the jury that they were to disregard that evidence. There were no objections.

For the defense, Appellant's father testified he owned the van parked in his yard. He testified that Thomas had been staying in the van. He also testified that Appellant and his girlfriend had stayed in the van and had also stayed in his living room.

Appellant testified on direct examination that, on January 22, 2004, he went to his father's house to help him install a fuel pump on an Oldsmobile. He also testified

5

that Thomas had been staying at his father's house in the van.[7]  Appellant stayed overnight in the living room and the next morning Thomas offered him a ride to Lubbock.  He testified that he knew nothing about the methamphetamine under the passenger seat or the black leather pouch discovered by Ashburn.   He also denied telling Thomas he would make his bail if he would take the rap and he denied knowing anything about the methamphetamine in the van or in the desk drawer in the living room of his father's house.

With regard to the incident on July 12, 2004, Appellant testified that when officers showed up at his father's house with a warrant for his arrest he knew there were drugs on the table and he was using them, but he denied that they were his drugs.  Rather, the drugs belonged to a friend who was also at the house when the warrant was served.  On cross-examination, Appellant agreed with the State that he used methamphetamine and had possessed the drug in the past at his father's house.

Prior to closing arguments, the trial judge read the jury charge which included a limiting instruction on extraneous offenses.[8]  During closing arguments, Appellant's counsel drew the jury's attention to the limiting instruction and argued that the

---

[7]Thomas testified that he was staying with his girlfriend and had never stayed in the van.

[8]The trial court's charge stated, in pertinent part, as follows:

> (E) The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case.  This evidence was admitted for the purpose of aiding you, if it does, in passing upon the question of the defendant's motive, intent, knowledge, possession, opportunity, absence of mistake or accident, and for the purpose of rebutting a defensive theory.  You cannot consider this evidence of extraneous crimes or bad acts for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such extraneous crimes or bad acts.

6

methamphetamine found in the house and van belonged to his client's father, and the methamphetamine found in Thomas's vehicle belonged to other persons who had access to the vehicle. Further, he argued that, regarding the incident which had occurred on July 12, 2004, Appellant had admitted he knew the drugs were there and he was using them, but the drugs did not belong to him.

Thereafter, the jury found Appellant guilty of the offense of possession with intent to deliver a controlled substance (methamphetamine) having a weight of four grams or more but less than 200 grams and sentenced him to thirty-five years confinement. No direct appeal was timely filed; however, the Court of Criminal Appeals granted Appellant an out-of-time appeal on February 24, 2010.[9] This appeal followed.

## Discussion

Appellant's issues one and two assert the trial court erred by admitting evidence, at the guilt-innocence stage, concerning the syringe found in his sock and the circumstances surrounding his arrest pursuant to a warrant on July 12, 2004, because that evidence was irrelevant, showed character conformity, and was more prejudicial than probative. See Tex. R. Evid. 401, 404(b), 403.[10] By his third issue, Appellant asserts the evidence that he was in possession of the methamphetamine was legally and factually insufficient to support his conviction.

---

[9]*Ex parte Phillips,* No. AP-76,209, 2010 Tex. Crim. App. Unpub. LEXIS 131 (Tex.Crim.App. Feb. 24, 2010) (original proceeding).

[10]Provisions of the Texas Rules of Evidence will be cited simply as "Rule ____" throughout the remainder of this opinion.

7

## I.    Issues One and Two -- Extraneous Offenses

Although the general rule is that the defendant is to be tried only for the offense charged and not for any crimes or for being a criminal generally; *Segundo v. State*, 270 S.W.3d 79, 87 (Tex.Crim.App. 2008) (citing *Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App. 1988)), evidence of extraneous acts of misconduct are admissible if (1) the uncharged act is relevant[11] to a material issue in the case, and (2) the probative value of that evidence is not significantly outweighed by its prejudicial effect. *Id.* So long as the controverted evidence tends to establish some evidentiary fact related to motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or rebut some defensive theory, the extraneous offense evidence is admissible. *See* Tex. R. Evid. 404(b). *See also Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App. 2003); *Williams v. State*, 290 S.W.3d 407, 410 (Tex.App.--Amarillo 2009, no pet.) (citing *Santellan v. State*, 939 S.W.2d 155, 168-69 (Tex.Crim.App. 1997)).

In determining whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, we consider (1) how well the evidence makes a "seriously contested" issue more or less probable; (2) the potential of the evidence to confuse or prejudice the jury; (3) the time needed to present the evidence;

---

[11]Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401.

and (4) the opponent's need for the evidence.  *See Wyatt v. State*, 23 S.W.3d 18, 26 (Tex.Crim.App. 2000).

## A.    Standard of Review

While acknowledging that the trial court is given wide latitude to admit or exclude evidence of extraneous offenses; *Sanders v. State*, 255 S.W.3d 754, 760 (Tex.App.--Fort Worth 2008, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim.App. 1991) (op. on reh'g)), we review a trial court's ruling on the admissibility of extraneous offense evidence under an abuse of discretion standard.  *Prible v. State*, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005).  We will uphold the trial court's ruling if it is within the "zone of reasonable disagreement;" *id.* (quoting *Santellan*, 939 S.W.2d at 169), i.e., "if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex.Crim.App. 2009) (citing *Santellan*, 939 S.W.2d at 169).  "If the ruling [is] correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment."  *Martin v. State*, 173 S.W.3d 463, 467 (Tex.Crim.App. 2005) (quoting *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex.Crim.App. 2004)).

**B. Issue One**

From the record, it is apparent that the trial court deliberated on Appellant's evidentiary objections during a pretrial hearing. From its actions, it appears the trial court accepted the State's explanation that connecting the syringe found on Appellant in jail to the syringe in the console of Thomas's vehicle and the clear liquid in the syringe with the clear liquid found in the van parked outside his father's residence was probative evidence because it linked Appellant to the methamphetamine found in Thomas's vehicle on the passenger side where Appellant was sitting and the liquid methamphetamine located in the van at his father's residence. Therefore, the State satisfied the trial court that the extraneous evidence had relevance apart from its character conformity value. *See Santellan*, 939 S.W.2d at 169 (citing *Montgomery*, 810 S.W.2d at 387). This evidence was relevant to establish knowledge of the methamphetamine in both instances and rebut the defensive theory that Appellant had no knowledge of the methamphetamine in either the van or Thomas's vehicle. Therefore, we conclude the trial court's decision was within the zone of reasonable disagreement.

In balancing probative value and unfair prejudice under Rule 403, an appellate court presumes that the probative value will outweigh any prejudicial effect. *See Sanders v. State*, 255 S.W.3d 754, 760 (Tex.App.--Fort Worth 2008, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 389). The "balance is always tilted toward admission, not exclusion, of otherwise relevant evidence." *De La Paz*, 279 S.W.3d at 343. It is

10

therefore the objecting party's burden to demonstrate that the probative value is *substantially* outweighed by the danger of unfair prejudice. *Id.* (citing *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex.App.--Houston [14th Dist.] 1999, no pet.)).

Much of Appellant's argument regarding unfair prejudice simply asserts that the evidence regarding the syringe is *inherently* prejudicial. Thus, Appellant has failed to establish that the probative value of the evidence was *significantly* or *substantially* outweighed by its prejudicial effect. *See Segundo*, 270 S.W.3d at 87-88; *Sanders*, 255 S.W.3d at 760. *See also Wyatt,* 23 S.W.3d at 26 ("[a]ny evidence presented by the State is generally prejudicial to the defendant"). Appellant's knowledge of the methamphetamine in the van and residence were seriously contested. Although Thomas's testimony linked Appellant to the methamphetamine in the van and his vehicle, Appellant denied knowledge of either. A small amount of powdered methamphetamine was found on Thomas's person at the time of arrest, but, at the jail, Appellant was in possession of a syringe containing a clear liquid similar in appearance to that in the van where Thomas testified Appellant was cooking methamphetamine. One theory advanced by Appellant through cross-examining witnesses and his direct testimony was that Thomas was not credible. Therefore, as between testimony offered by Thomas and the testimony offered by Appellant, evidence pertaining to the syringe was relevant to the issue of credibility.

Moreover, the time necessary to present this extraneous offense evidence represented a negligible portion of the State's case at trial. Limiting instructions were

given by the trial court and subsequently emphasized by defense counsel during closing arguments. Further, there is no evidence of record that the jury disregarded the trial court's limiting instructions. *See Vega v. State*, 255 S.W.3d 87, 105 (Tex.App.--Corpus Christi 2007, pet. ref'd) ("any error was harmless because the [limiting] instruction, which we presume the jury followed, identified material issues for which the evidence could be considered under Rule 404(b)" and appellant offered no evidence rebutting the presumption that the jury followed the trial court's instructions). Accordingly, issue one is overruled.

### C. Issue Two

At the pretrial hearing, the trial court indicated that evidence of the circumstances surrounding Appellant's arrest in July of 2004 was relevant to show intent, knowledge, absence of mistake or accident. We agree.

Evidence that Appellant possessed methamphetamine at his father's residence on a later occasion is circumstantial evidence that Appellant intentionally or knowingly possessed methamphetamine on an earlier occasion. *See Wingfield v. State*, 197 S.W.3d 922, 925 (Tex.App.--Dallas 2006, no pet.) (evidence that appellant had used marijuana on other occasions "was circumstantial evidence that appellant intentionally or knowingly possessed marijuana on [date alleged]"); *Mason v. State*, 99 S.W.3d 652, 656 (Tex.App.--Eastland 2003, pet. ref'd) (evidence appellant possessed cocaine two years after charged offense "admissible as circumstantial evidence of appellant's knowing possession of cocaine in this case"). *See Rogers v. State*, 853 S.W.2d 29, 32

(Tex.Crim.App. 1993) (evidence that appellant possessed marijuana "could arguably make it more probable that the appellant would also be inclined to be in possession of another type of illegal substance (methamphetamine)").

Again, much of what Appellant asserts is that the evidence of the July 2004 incident is *inherently* prejudicial while failing to establish that the probative value of the evidence was *significantly* or *substantially* outweighed by its prejudicial effect. *See Segundo*, 270 S.W.3d at 87-88; *Sanders*, 255 S.W.3d at 760. Again, Appellant's knowledge of the methamphetamine in the van and residence were seriously contested and although Thomas's testimony linked Appellant to the methamphetamine in the van and the vehicle, Appellant denied knowledge of either.

Moreover, again, the time necessary to present this extraneous offense evidence represented a negligible portion of the State's case at trial and the limiting instruction given by the trial court was subsequently emphasized by defense counsel in his closing argument. Further, there is no evidence in the record that the jury disregarded the trial court's limiting instructions and it is difficult to find either prejudice or jury confusion when Appellant testified on direct examination regarding the July 2004 incident and Appellant's counsel argued the incident in his closing argument. *See Vega*, 255 S.W.3d at 105. Accordingly, issue two is overruled.

## II.    Issue Three -- Sufficiency of the Evidence

Appellant asserts the State's evidence in support of its contention that he had exercised actual care, custody, control, or management over the methamphetamine

discovered in Thomas's vehicle, the van, and his father's residence was legally and factually insufficient.

### A.     Standard of Review

While this appeal was pending, the Court of Criminal Appeals held that appellate courts were to review the sufficiency of evidence in a criminal case using only the legal sufficiency standard.   *See Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010)[12]   In *Brooks*, the Court held that the only standard that a reviewing court should apply in determining whether the evidence in a criminal proceeding is sufficient to support each element of the criminal offense beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*.[13]   Thus, since the Court has abolished factual sufficiency review, we need not address Appellant's challenge to the factual sufficiency of the evidence.

In assessing the sufficiency of the evidence to support a criminal conviction under the standard enunciated in *Jackson v. Virginia*, this Court considers all the evidence in a light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson,*

---

[12]Judge Hervey delivered the opinion in *Brooks*, joined by Judges Keller, Keasler, and Cochran; and, Judge Cochran delivered a concurring opinion, joined by Judge Womack.  Although we are not bound by a decision of four judges, *Pearson v. State,* 994 S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read the combined opinions of Judges Hervey and Cochran in *Brooks* as abandoning factual sufficiency as an evidentiary sufficiency standard of review distinct from legal sufficiency.

[13]*Jackson v. Virginia,* 443 U.S. 307, 335 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

14

443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. When conducting such a review, this Court is required to defer to the jury's role as the sole judge of witness credibility, and the weight their testimony is to be afforded. *Id.* at 899. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).

To find legal sufficiency, "[e]ach fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). However, if, given all the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003) (citing *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993)).

## B. Applicable Law

To support the verdict rendered in this case, the State was required to prove that Appellant knowingly possessed a controlled substance, to-wit: methamphetamine, in an amount of four grams or more but less than 200 grams with intent to deliver. To prove *possession*, the State was required to show that Appellant (1) exercised "actual care, custody, control, or management" of the substance and (2) knew the matter possessed was contraband. *See* §§ 481.002(38) & 481.112(d). (West 2010); *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005).

15

Where, as here, the accused does not have actual possession of the controlled substance or exclusive possession of the locale where the controlled substance was found, it cannot be concluded or presumed that the accused had possession over the contraband unless there are independent facts or circumstances that tend to connect or link the accused to the knowing possession of the contraband. *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex.Crim.App. 2006).

There are numerous nonexclusive factors that, under the unique circumstances of each case, have been recognized as contributing to an evaluation of whether an accused is linked to the contraband. *See Triplett v. State*, 292 S.W.3d 205, 208 (Tex.App.--Amarillo 2009, pet. ref'd). Those links include, but are not limited to: (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made any incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made any furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.2d at 162 n.12. *See Triplett*, 292 S.W.3d at 208; *Figueroa v. State*,

16

250 S.W.3d 490, 500 (Tex.App.--Austin 2008, pet. ref'd) (citing *Brown v. State*, 911 S.W.2d 744, 745 (Tex.Crim.App. 1995), *cert. denied*, No. 08-7719, 2009 U.S. LEXIS 1276 (U.S. Tex. Feb. 23, 2009)).

These factors, however, are simply that--factors which may circumstantially establish the sufficiency of evidence offered to prove a knowing "possession." *Evans*, 202 S.W.3d at 162 n.12 ("They are not a litmus test.") Furthermore, there is no set formula that an appellate court can use to determine if there are sufficient links to support an inference of knowing possession of drugs. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.--Dallas 2003, no pet.). Each case must be examined according to its own facts on a case-by-case basis; *Roberson v. State*, 80 S.W.3d 730, 736 (Tex.App.-- Houston [1st Dist.] 2002, pet. ref'd), and the number of links is not as important as the combined logical force of all the evidence tending to link the accused to the contraband. *Evans,* 202 S.W.3d at 162, 166.

### C. Analysis

Viewing the evidence in a light most favorable to the verdict, the evidence at trial indicated that, on January 22, 2004, Appellant was seen at his father's residence with methamphetamine. Materials used to make methamphetamine were seen inside the van and Appellant was observed preparing to make methamphetamine with those materials. On January 23, 2004, Appellant was observed coming out of the van after "gassing" methamphetamine. Sergeant Ybarra discovered a small amount of methamphetamine in Appellant's father's residence in a desk drawer and two glass

containers of clear, liquid methamphetamine in a small refrigerator in the van parked in Appellant's father's yard.

When Appellant was searched at the Lubbock County Jail shortly after his arrest, he had a syringe in his sock filled with a clear liquid. The syringe discovered on Appellant at the jail matched a syringe found in the console of the vehicle he had been riding in as a passenger. Beside the passenger seat, a black leather pouch containing small plastic bags filled with methamphetamine and a set of digital scales was found. Underneath the passenger seat, a bag containing a substantial amount of methamphetamine was found. In the vehicle's ashtray, was a burnt marijuana cigarette which Appellant admitted smoking. In addition, Appellant was observed making furtive movements inside Thomas's vehicle. Thomas denied knowing about any methamphetamine in his vehicle and testified the methamphetamine in his vehicle, the van, and Appellant's father's residence did not belong to him. Further, while sitting in the DPS cruiser, Appellant told Thomas that, if he would take the rap, he would bail him out of jail.

When an arrest warrant was later served on Appellant, he was found in possession of methamphetamine and multiple items of drug paraphernalia, i.e., syringes, a glass pipe, propane torches, and two plastic bags of a leafy substance. Appellant admitted that when he was at his father's house he was using and had possessed methamphetamine that belonged to a friend.

In support of this appeal, Appellant primarily argues conflicts in the testimony of Thomas, Appellant, and Appellant's father while drawing all inferences from the evidence in favor of Appellant and against the verdict. As an appellate court, we do not resolve any conflicts of fact, weigh any evidence, or evaluate the credibility of any witnesses. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999) ("When reviewing the evidence, our role is not to become a thirteenth juror.") Rather, we give deference to the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), while resolving any inconsistencies in favor of the verdict. *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).

Given the combined logical force of the evidence most favorable to the verdict, we find the evidence sufficiently links Appellant to the methamphetamine to the requisite level of confidence that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Appellant's third issue is overruled.

## Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Do not publish.