02-09-435-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00435-CR

 

 


 
 
 CHANG HYEONG LEE
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 396TH DISTRICT Court OF Tarrant
COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

In
seven points, Appellant Chang Hyeong Lee appeals his conviction for sexual
assault of a child.  We affirm.

II. 
Factual and Procedural Background

A
grand jury indicted Lee for sexually assaulting then fourteen-year-old Jane
Branch.[2]  The
jury convicted Lee of sexual assault of a child under seventeen years of age
and sentenced him to ninety months’ incarceration.[3]
 This appeal followed.

III. 
Sufficiency

In
his first and second points, Lee challenges the legal and factual sufficiency
of the evidence to support his conviction.  But after Lee filed his brief, the
court of criminal appeals held that there is no meaningful distinction between
the legal-sufficiency standard and the factual-sufficiency standard.  See Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling Clewis
v. State, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).  Thus, the Jackson
standard, which is explained below, is the “only standard that a reviewing
court should apply in determining whether the evidence is sufficient to support
each element of a criminal offense that the State is required to prove beyond a
reasonable doubt.”  Id.  We overrule Lee’s second point.

A.  Standard of Review

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge
of the weight and credibility of the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus,
when performing an evidentiary sufficiency review, we may not re-evaluate the
weight and credibility of the evidence and substitute our judgment for that of
the factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).  Instead, we Adetermine whether the
necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@  Hooper
v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.  The standard of review is the same
for direct and circumstantial evidence cases; circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor.  Clayton,
235 S.W.3d at 778; Hooper, 214 S.W.3d at 13.

B.  Evidence

On
January 3, 2008, the Fort Worth police were conducting surveillance of Lee’s
store, the Glen Garden Mini Mart in Fort Worth, based on information
that the store would be the site of a gang-related human trafficking violation.
 Fort Worth Gang Unit Officer Travis Eddleman testified that he saw a young
Hispanic male and Jane Branch enter Lee’s store.  After a short time, the
Hispanic male exited alone, and the store’s lights went out as if the business
had closed.

Officer
Eddleman knocked on the store’s locked front door, and Lee eventually let him
into the store.  Officer Eddleman found Branch hiding in the store’s back room,
which contained a bed, a dinette table, a refrigerator, and a heater.  In the
same room, the police found a condom wrapper and an “unrolled and wet” condom.  After
talking with Branch, the police arrested Lee for sexual assault of a child.

Branch
testified that she had sex with Lee on January 3, 2008; that, at the time, she
was fourteen years old and was not Lee’s spouse; and that after taking her to
the store’s back room, Lee had removed her pants and underwear, laid her on the
bed, penetrated her sexual organ with his tongue and his finger, and, after
putting on a condom, penetrated her sexual organ with his penis.  She also
stated that she saw him remove the condom, but she did not see him throw it
away, and that after talking with the police, they took her to a hospital,
where she underwent a sexual assault examination.

Branch
also testified that on three prior occasions, Lee had paid Vario Centro (VC)
gang members in order for Lee to have similar sexual contact with her.  On
cross-examination, Branch stated that at the time of Lee’s arrest, she had run
away from home and was staying with VC gang members; that she had been taking
drugs, including cocaine; and that her boyfriend at the time, one of the gang
members, was her pimp and that he paid her with cocaine.

Fort
Worth Police Officer J.J. Jeanes testified that he photographed Lee’s store on
the night of Lee’s arrest and that he observed both an “open condom wrapper”
and an “unrolled and wet” condom under a paper towel in a cardboard box in the
store’s back room.  Officer Jeanes collected the condom and wrapper, the top of
the bed’s mattress, a pillow case, a comforter, and a fitted sheet.

Fort
Worth Police Detective H.D. Murtaugh testified that she was at the mini-mart on
the night of Lee’s arrest, that she spoke with Branch at the scene, that she
advised Lee of his rights several hours after Lee’s arrest, and that after Lee
waived his rights, she interviewed him.  Detective Murtaugh stated that despite
an initial denial, Lee admitted to having sex with Branch and admitted that he
knew it was illegal to have sex with an underage girl.  On cross-examination, Detective
Murtaugh testified that she did not witness anyone taking Lee’s DNA sample and
that she did not believe that the police had collected Lee’s DNA.  Lee then entered
a completed buccal swab consent form into evidence.  Lee’s only witness,
Christina Capt, a forensic analyst and technical leader at the University of
North Texas Center for Human Identification, testified that she had received
DNA evidence from Branch’s sexual assault examination but had not received a
buccal swab from any known suspect.

C.  Sexual Assault of a
Child

          A
person commits sexual assault of a child under seventeen years of age when that
person intentionally or knowingly causes the penetration of the child’s sexual
organ or causes the child’s sexual organ to contact the mouth, anus, or sexual
organ of another person, and the child is not the person’s spouse.  See
Tex. Penal Code § 22.011(a)(2), (c)(1) (Vernon Supp. 2010).  The indictment
alleged that on or about January 3, 2008, Branch was under seventeen years old,
that she was not Lee’s spouse, and that Lee committed the offense of sexual
assault of a child by intentionally or knowingly (1) inserting his penis in
Branch’s sexual organ, (2) causing Branch’s sexual organ to come into contact
with his mouth, and (3) inserting his finger into Branch’s sexual organ.

D. 
Analysis

          The
record reflects that on January 3, 2008, Branch was fourteen years old; that
she was not Lee’s spouse; that Lee admitted that he paid to have sex with
Branch and that he had sex with her; that Branch testified in detail about how
Lee penetrated her sexual organ with his mouth, finger, and penis; that Officer
Jeanes collected a recently used condom from a box in the store’s back room;
that Lee’s store was under police surveillance; and that Officer Eddleman
observed Branch entering, but not exiting, Lee’s store and found Branch hiding
in a back room that contained a bed.  Viewing the evidence in the light most
favorable to the prosecution, we conclude that the jury could have found beyond
a reasonable doubt that Lee sexually assaulted fourteen-year-old Branch.  See
Tex. Code. Crim. Proc. art. 38.04; Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000); West v. State, 121 S.W.3d 95, 111 (Tex.
App.—Fort Worth 2003, pet ref’d) (holding child-victim’s testimony detailing an
assault legally sufficient to support conviction for sexual assault).  We
overrule Lee’s first point.

IV. 
Suppression

In
his third point, Lee, who is of Korean descent, argues that his statement to
the police should have been suppressed because he did not understand English
well enough to knowingly and intelligently waive his rights; thus, the
statement was not voluntary, and its admission violated the Fifth and
Fourteenth Amendments to the United States Constitution and article 38.22 of
the code of criminal procedure.

A.  Standard of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim.
App. 2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App.
2002).  But when application-of-law-to-fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652–53.

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings,
we determine whether the evidence, when viewed in the light most favorable to
the trial court’s ruling, supports those fact findings.  Kelly, 204
S.W.3d at 818–19.  We then review the trial court’s legal ruling de novo
unless its explicit fact findings that are supported by the record are also
dispositive of the legal ruling.  Id. at 818.

          We
must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404
(Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).

B.  Suppression Hearing

The
trial court carried Lee’s motion to suppress his oral statement until trial and
held a suppression hearing prior to Detective Murtaugh’s testimony.  See
Jackson v. Denno, 378 U.S. 368, 394, 84 S. Ct. 1774, 1790  (1964).
 During the hearing, Detective Murtaugh testified that after Lee’s arrest she read
each of his rights to him; that she showed Lee the Miranda form as she
read his rights to him; that Lee acknowledged that he understood each right;
that after she read each right to him, Lee initialed the Miranda form;
and that Lee waived his rights and agreed to talk with her.  Detective Murtaugh
responded affirmatively when asked by the State if, based on her twenty-four
years’ experience, she was confident that Lee understood the Miranda
warning.

During
Detective Murtaugh’s testimony, the State proffered, for purposes of the suppression
hearing only, a recorded copy and a transcript of Lee’s interview.  The
recording confirmed that Detective Murtaugh read Lee his rights and that Lee could
follow along on the Miranda form as his rights were read to him; that Detective
Murtaugh advised Lee that he could remain silent and that any statement could
be used against him at trial; and that after Lee responded that he “little bit
understood” these rights, Detective Murtaugh repeated that any statement could
be used against Lee in court.  After she advised Lee of his remaining rights, Detective
Murtaugh asked him if he understood “all that” and if he wanted her to repeat
anything.  Lee then confirmed in English that he understood his rights.  Detective
Murtaugh asked Lee to sign and date the Miranda form, and Lee signed the
form in English.  During this exchange, Lee corrected Detective Murtaugh’s
recitation of the time, telling her that it should be 12:47 a.m. and not p.m.
as she had erroneously stated.  The recording revealed that contrary to Detective
Murtaugh’s testimony, she asked Lee to write his initials beside each right
after both she and Lee had signed the form and not as she read each right to
him.  The recording also revealed that Lee had sufficient command of the
English language to carry on an hour-long conversation about the events leading
up to his arrest.

Lee,
who testified at the suppression hearing through an interpreter, stated that he
had resided in the United States for twenty years and that during the four
years prior to his arrest, he had communicated with his mini-mart customers in
English.  Lee stated that he did not understand his rights or the Miranda process
and that he initialed and signed the Miranda form because Detective Murtaugh
told him to do so.  Lee also testified that he quickly agreed that he
understood because he needed to use the restroom and Detective Murtaugh would
“not even allow me to go to the bathroom, and it was a torture.”  Although Lee
testified that he asked Detective Murtaugh for an interpreter and to go to the
restroom, neither the recording nor the transcript contain these requests.

After
listening to the first part of the audio recording and reading the transcript
of Lee’s entire interview,[4] the trial court denied
Lee’s motion and noted that it was 

satisfied that [Lee]
had sufficient command of the language to understand everything that [the]
[d]etective . . . had been asking him, including but not limited to the
[required Miranda] warnings . . . . [] and there is nothing in [the transcript]
that indicates that the Defendant ever invoked his rights to terminate the
interview or to request counsel and did nothing but to freely and voluntarily
answer questions . . . . 

 

The
trial court’s written findings and conclusions stated: 

Findings
of Fact:

. . . .

4.  Prior to asking
any questions regarding the offense, Detective Murtaugh advised the defendant
of his Miranda warnings.

 

5.  Detective
Murtaugh, after each warning was read to him, would ask the defendant, in
English, if he understood each respective warning.  The defendant advised
Detective Murtaugh, each time, that he understood the warnings.  The defendant
placed his initials beside each warning.

 

6.  At the conclusion
of the warnings being given, the defendant signed his name, in English, on the
warning sheet indicating that he understood his rights.

 

7.  After the
defendant signed the warning sheet, Detective Murtaugh conducted an oral
interview with the defendant in English.  The oral interview was reviewed both
in court and in camera by the Court.

 

8.  There was no
interpreter present during any of the interview between the defendant and
Detective Murtaugh.

 

9.  The interview
between the defendant and Detective Murtaugh lasted just under one hour in
length.

 

10.  The defendant
testified at the hearing on the motion to suppress that he spoke only a limited
amount of English.

 

Conclusions of Law: 

 

1.  Based upon the
contents of the recording of the interview and the testimony of Detective
Murtaugh, the court concludes that the defendant understood his rights as
explained to him in English.

 

2.  The defendant
clearly answered the questions asked of him by Detective Murtaugh, both at the
scene of his arrest and at the Fort Worth Police Department.

 

3.  The defendant was
able to understand his rights and engage in a conversation with Detective Murtaugh
using the English language.

 

4.  The
constitutional mandates of Article 38.23 of the Code of Criminal Procedure were
followed in this case.

 

5. The electronic
recording between the defendant and Detective Murtaugh is admissible at trial.

 

6.  The court denies
the defendant’s motion to suppress his oral statement.

 

C.  Analysis 

Lee’s
ability to understand English was a determination for the trial court to make
based on its evaluation of the credibility and demeanor of the witnesses.  See
Weide, 214 S.W.3d at 24–25.  The trial court read the entire interview
transcript and listened to the first one-third of the audio recording of Lee’s
interview.  The trial court also heard testimony from both Detective Murtaugh
and Lee regarding Lee’s understanding and voluntary waiver of his rights. 
Other than Lee’s testimony, the record does not reflect that Lee requested a
translator or otherwise indicated that he did not understand his rights as read
to him by Detective Murtaugh.  And, although the audio recording does not
support trial court finding of fact number five in its entirety[5]
the recording supports the remaining findings and reflects that Detective
Murtaugh read Lee all of his rights, that Lee verbally acknowledged in English
that he understood his rights, that he willingly initialed and signed the Miranda
form in English, and that he held a lengthy conversation in English with
Detective Murtaugh.  The record supports the trial court’s determination that
Lee understood his rights and knowingly and voluntarily gave his statement to Detective
Murtaugh.  See Stevens, 235 S.W.3d at 740 (noting an appellate
court must uphold the trial court’s ruling if it is supported by the record and
correct under any applicable theory of law).  Because the trial court could
have found that Lee had sufficient command of the English language to understand
his rights as they were explained to him, it did not err by denying Lee’s
motion to suppress.  We overrule Lee’s third point.

V.  Rule
403 Objections

          In his
fourth through seventh points, Lee argues that the trial court abused its
discretion by overruling his rule 403 objections.  Specifically, Lee argues
that the admitted evidence was substantially more prejudicial than probative
and thus inadmissible under rule 403.[6]

A.  Standard
of Review

          We
review a trial court’s determination under rule 403 for an abuse of discretion,
recognizing that the trial court is in a superior position to gauge the impact
of the relevant evidence.  Mozon v. State, 991 S.W.2d 841, 847 (Tex.
Crim. App. 1999); Jones v. State, 119 S.W.3d 412, 421–22 (Tex. App.—Fort
Worth 2003, no pet.).  In balancing the probative value and unfair prejudice
under rule 403, we presume that the probative value will outweigh any
prejudicial effect.  Montgomery, 810 S.W.2d at 389.  It is therefore the
objecting party’s burden to demonstrate that the probative value is
substantially outweighed by the danger of unfair prejudice.  Hinojosa v.
State, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Poole
v. State, 974 S.W.2d 893, 897 (Tex. App.—Austin 1998, pet. ref’d).

B. 
Prior Sexual Relationship

In
his fourth point, Lee complains that the trial court erred by denying his rule
403 objection to the State’s plan to refer to his sexual history with Branch in
its opening statement.  However, even though the trial court overruled Lee’s
objection, the record reflects that the State did not refer to the parties’
sexual history in its opening statement.  Therefore, we cannot say that the
trial court abused its discretion by overruling Lee’s objection.  Cf.
Peterson v. State, No. 14-05-00874-CR, 2006 WL 3511784, at *2 (Tex.
App.—Houston [14th Dist.] Dec. 7, 2006, no pet.) (“The trial court did not err
in overruling an objection to the admission of documents that were never
introduced into evidence.”).  We overrule Lee’s fourth point.

In
his fifth point, Lee complains that the trial court erred by denying his rule
403 objection to Branch’s testimony about her and Lee’s prior sexual
encounters.[7]

1.  Extraneous
Offense Evidence

After
the trial court overruled Lee’s objection to the State’s opening statement, the
trial court granted Lee a running objection and agreed to give the jury a
limiting instruction on evidence pertaining to Lee and Branch’s prior sexual
encounters.

During
Branch’s testimony, before to discussing the prior sexual encounters, the State
requested that the parties approach the bench “[j]ust to be safe . . .
regarding the other sexual activities.”  At that time, Lee renewed his
objection and his request for a jury instruction on the issue.  The trial court
again overruled Lee’s objection.  After Branch testified that she met Lee in
December 2007, the trial court instructed the jury that 

we may be getting
into some testimony here that is different than the date that is set out in the
indictment. . . . You’re instructed that if there is testimony before you that
constitutes other bad acts or crimes committed allegedly by this defendant, you
cannot consider them for any purpose unless you first believe that they are
proved beyond a reasonable doubt.

 

And after that, you
may -- you may take them into consideration for assessing the intent or the
state of mind of the Defendant at the time of the commission of the offense
alleged in the indictment and for no other purpose.

 

After
this instruction, Branch testified that VC gang members had arranged for her to
have sex with Lee on three occasions prior to January 3, 2008.[8] 
Branch stated that VC gang members first took her to meet Lee at his store in
December 2007, that she went with Lee to a nearby hotel, and that once inside a
hotel room, Lee placed her on the bed, removed her pants, and after putting his
tongue on her sexual organ, Lee put on a condom and penetrated her sexual organ
with his penis.  Branch also testified that VC gang members took her to Lee’s
store on two other occasions and that on both occasions Lee, in the back room
of his store, performed the same sexual acts with her as he had in the hotel
room.

Branch
stated that on the night of Lee’s arrest, she did not tell the officers about
the prior incidents because she had been afraid that she would be arrested for
prostitution, and that although several months prior to trial she told the
prosecutor about one of her prior encounters with Lee, she did not tell him
about the other two incidents until a day before the trial because she was
embarrassed, “had guilt,” and was afraid that she would get in trouble.

          In
its charge to the jury, the trial court instructed the jury that

if there is any
testimony before you in this case regarding the Defendant’s having committed
offenses, wrongs, or acts other than the offenses alleged against him in the
indictment in this case, you cannot consider said testimony for any purpose
unless you find and believe beyond a reasonable doubt that the Defendant
committed such offenses, wrongs, or acts, if any were committed, and even then
you may only consider the same in determining:  (1) the motive, opportunity,
intent, knowledge, or identity for this defendant now on trial before you, or
(2) to consider the state of mind of the defendant and the child as well as the
previous and subsequent relationship between the defendant and the child, if any;
and for no other purpose.

 

2. 
Applicable Law

To
determine whether the prejudice of evidence such as an extraneous offense
substantially outweighs its probative value we consider (1) how compellingly
the evidence serves to make a fact of consequence more or less probable, which
is related to the strength of the evidence presented by the proponent to show
the defendant in fact committed the extraneous offense; (2) the potential
the other extraneous offense evidence has to impress the jury “in some
irrational but nevertheless indelible way”;  (3) the time the proponent will
need to develop the evidence, during which the jury will be distracted from
consideration of the indicated offense; and (4) the force of the proponent’s
need for this evidence to prove a fact of consequence.  Mozon, 991
S.W.2d at 847 (citing Montgomery, 810 S.W.2d at 389–90).

When
the relevant criteria are viewed objectively and lead to the conclusion that
the danger of unfair prejudice substantially outweighs the probative value of
the proffered evidence, the appellate court should declare that the trial court
erred by failing to exclude it.  Curtis v. State, 89 S.W.3d 163, 170
(Tex. App.—Fort Worth 2002, pet. ref’d) (citing Montgomery, 810 S.W.2d
at 392).

3. 
Analysis  

 

Applying
the rule 403 balancing factors, we note that evidence of Lee and Branch’s prior
recent sexual encounters is highly probative to show Lee’s state of mind and
the nature of his relationship with Branch and made it compellingly
likely—because he had the necessary intent and ability—that he performed sexual
acts with Branch on January 3, 2008.  See Mozon, 991 S.W.2d at 846;
Ernst v. State, 971 S.W.2d 698, 701 (Tex. App.—Austin 1998, no pet.).

Further,
although Branch’s testimony about her prior sexual encounters with Lee
encompassed about one-half of the State’s direct examination[9]—which
included her explanation about why she had delayed in telling the State about
the prior incidents—the portions of her testimony detailing her and Lee’s prior
sexual activities are relatively short.  Additionally, prior to Branch’s
testimony and in the jury charge, the trial court specifically instructed the jury
about how to consider evidence concerning the prior sexual encounters.  Consequently,
Branch’s testimony about her extraneous sexual encounters with Lee was not
likely to create such prejudice in the juror’s minds that they would be unable
to consider the evidence for its proper purpose.  See Poole, 974
S.W.2d at 898 (noting that evidence of extraneous sexual contact explains an
unnatural relationship that would otherwise seem wholly illogical and
implausible to the average juror).

Likewise,
Lee attacked Branch’s credibility in his opening statement when he denied his involvement
in prostitution activities, which increased the State’s need for Branch’s
testimony about their prior sexual contact.  And, beginning with the
presumption that Branch’s testimony about her prior sexual encounters with Lee was
more probative than prejudicial and evaluating it under the rule 403 factors,
we cannot say that Lee was unfairly prejudiced by Branch’s testimony.  See Mozon,
991 S.W.2d at 847; Montgomery, 810 S.W.2d at 389; see also Boutwell
v. State, 719 S.W.2d 164, 178 (Tex. Crim. App. 1985) (noting that in
prosecutions for sex offenses against children, “extraneous acts between the
complainant and the defendant are usually more probative than prejudicial”).  We
overrule Lee’s fifth point.

C.  Condom
Photographs

          In
his sixth issue, Lee argues that admitting two photographs of a box
containing a used condom and condom wrapper “did no more than to inflame the jury
in sympathy for the State.”

1. 
Photographic Evidence Under Rule 403

A
court may consider many factors in determining whether the probative value of
photographs is substantially outweighed by the danger of unfair prejudice,
including (1) the number of exhibits offered, (2) their gruesomeness, (3) their
detail, (4) their size, (5) whether they are in color or in black and white,
(6) whether they are close up, (7) the availability of other means of proof,
and (8) other circumstances to the individual case.  Alami v. State, 333
S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet. h.)  Photographs are
neither cumulative not lacking in significant probative value simply because
they merely corroborate other kinds of evidence.  Chamberlain v. State,
998 S.W.2d 230, 237 (Tex. Crim. App. 1999), cert denied, 528 U.S. 1082
(2000).

2. 
Analysis

The
two photographs are black and white medium and close-up distance depictions of
the interior of a cardboard box that contained a used condom.  Officer Jeanes
had previously testified about the items, and Branch would later testify that
Lee had used a condom when having sex with her.  See Ramirez v. State,
815 S.W.2d 636, 647 (Tex. Crim. App. 1991) (noting that when verbal testimony
describing a scene is admissible, then a photograph of that scene is also
generally admissible).  Because Lee stated that he did not accept prostitutes
offered by the gang or participate in prostitution-related activities, the
State needed the photographs to corroborate both Branch’s and Officer Jeanes’s
testimony.  Because the photographs corroborated Branch’s and Officer Jeanes’s
testimony, there were only two black and white photographs offered, and those
photographs were not gruesome, the trial court could have reasonably concluded
that the probative value of the photographs was not substantially outweighed by
their inflammatory nature.  See Sarabia v. State, 227 S.W.3d 320, 324
(Tex. App.—Fort Worth 2007, pet. ref’d) (noting that the State’s need for
photographs was increased when complainant’s testimony was not supported by DNA
or other physical evidence of sexual assault).  Accordingly, we hold that the
trial court did not abuse its discretion by overruling Lee’s rule 403
objections and by admitting the photographs.  We overrule Lee’s sixth point.

D.  Lee’s Statement

          In
his seventh point, Lee generally complains that because he did not speak fluent
English, the trial court violated rule 403 by allowing his statement into
evidence.  In his brief, Lee provides three short statements in support of his
argument: (1) “The Appellant did not speak fluent English”; (2) “The Trial
Court abused its discretion by allowing Appellant’s statement into evidence”;
and (3) “Appellant received a ninety month sentence.”

The
record reflects that during voir dire of Detective Murtaugh in the suppression
hearing, Lee made a rule 403 objection in conjunction with his motion to
suppress and argued,

I would suggest to
the Court that because [Lee] doesn’t speak English, he’s of Korean descent, the
statement is not voluntary.  

 

Therefore, I would
suggest to the Court that the probative value would be outweighed by the highly
prejudicial effect of letting the police officer testify to an interview of
[Lee]. . . . [Emphasis added.]

 

Because
we have already concluded that Lee’s statement was voluntary, we overrule Lee’s
seventh point.

VI. 
Conclusion

          Having
overruled all of Lee’s points, we affirm the trial court’s judgment.

 

 

BOB MCCOY
JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.  

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  May 12, 2011









[1]See Tex. R. App. P. 47.4.





[2]We use a pseudonym to protect
the complainant’s identity.





[3]Because Lee challenges the
trial court’s denial of his motion to suppress, the sufficiency of the evidence
to support his conviction, and the trial court’s ruling on several of his
evidentiary objections, we will address the evidence and proceedings in greater
detail below.





[4]Neither the audio
recording nor the transcript were presented to the jury, and the jury’s only
exposure to Lee’s statement and admission that he had sex with Branch was
through Detective Murtaugh’s testimony.





[5]That Lee initialed each
right after it was read to him individually.





[6]As part of his fourth
through sixth points, Lee generally argues that the trial court abused its
discretion by failing to conduct a balancing test after his timely rule 403 objections.
 The trial court is not required to hold a hearing or announce for the record
that it has conducted and completed the balancing test in its own mind.  Sanders
v. State, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref’d).  The
fact that a trial judge made a proper balancing test can be implied from the
record.  Montgomery v. State, 810 S.W.2d 372, 393 n.4 (Tex. Crim. App.
1991) (op on reh’g); Moyer v. State, 948 S.W.2d 525, 531 (Tex. App.—Fort
Worth 1997, pet. ref’d).  And, because the record does not indicate the trial
court refused to consider the objection or conduct the requisite balancing
test—it simply overruled Lee’s objection—we cannot conclude that the trial
court abused its discretion by failing to balance the evidence’s probative
value against its unfairly prejudicial effect.  See Rojas v. State, 986
S.W.2d 241, 250 (Tex. Crim. App. 1998); Menchaca v. State, 901 S.W.2d
640, 649 (Tex. App.—El Paso 1995, pet. ref’d).





[7]Lee does not challenge the
relevance of this evidence, and we note that if it does not violate rule 403,
it is otherwise admissible.  See Tex. Code Crim. Proc. Ann. art. 38.37 § 2
(Vernon Supp. 2010); Jones, 119 S.W.3d at 421.





[8]In his opening statement,
Lee stated that “almost on a daily basis” VC gang members came to his store to
intimidate, coerce, and threaten him.  He claimed that the gang members would
take his property, that they would “intimidate him and do other things that
were highly illegal and inappropriate,” and that gang members would bring girls
by to sell them to him as prostitutes but that Lee “would not participate in
this type of activity.  He chose not to participate in this type of activity.”





[9]Sixteen out of
thirty-eight total pages of direct testimony.