

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00212-CR

BRODERICK DEON PATTERSON                                      APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Broderick Deon Patterson pleaded guilty to murder, and after a trial on punishment, the jury assessed his punishment at confinement for life. The trial court sentenced him accordingly. In three issues, Patterson complains

---

[1] *See* Tex. R. App. P. 47.4.

of the admissibility of two 911 calls during the punishment trial and the denial of his motion for mistrial. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Eric Forrester was a senior at Southwest High School in Fort Worth. The school allowed its students to leave campus each day for lunch. Eric left campus at lunchtime one day to go pick up his sister, twenty-one-year-old Kali Forrester. Kali worked near Eric's school, and she needed a ride from work because her car would not start. Eric drove Kali to the family's home.

When they got home, Eric and Kali heard noises coming from upstairs. Eric called out to see if anyone was there. A voice responded, and Kali ran to the neighbor's house and called 911. Eric called 911 too, but he did not speak to the operator; he put his phone in his pocket and went upstairs. He found two men—Patterson and his accomplice, Clifton Elliott—burglarizing the home. One of the two men shot Eric in the head, killing him. Kali, who remained on the phone with the 911 operator, saw two men leave her house so she returned to her family's home. She found Eric lying on the floor and attempted to perform CPR on him. Investigators were unable to determine whether Patterson or Elliott shot Eric.

## III. ADMISSIBILITY OF 911 RECORDINGS UNDER RULE 403

In his first two issues, Patterson complains that the trial court abused its discretion by admitting, as State's Exhibits 104, 104A, 104B, and 105, the

recordings of both Eric's and Kali's 911 calls during the punishment trial.[2]

Patterson objected that the 911 recordings were substantially more prejudicial than probative.  *See* Tex. R. Evid. 403.  After conducting a rule 403 balancing test, the trial court overruled Patterson's objections and allowed the State to play the recordings for the jury.

## A.  Admissibility of Evidence in Punishment Phase and Standard of Review

In the punishment phase of a non-capital trial, article 37.07 governs the admissibility of evidence:  "Regardless of the plea . . . , evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including . . . the circumstances of the offense for which [the defendant] is being tried . . . ."  Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2012).  Evidence is relevant within the meaning of article 37.07 if it is helpful to the jury in tailoring an appropriate punishment.  *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (citing *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000)).  Generally, the jury is entitled to have before it all relevant information about the crime for which it is assessing punishment.

---

[2]State's Exhibit 104 is Eric's 911 call in real-time, and State's Exhibit 104A is the 911 call at a reduced speed.  The entire recording of Eric's 911 call also includes Kali's reaction after returning to find Eric, but the State stopped playing State's Exhibit 104 before the portion in which Kali returned to the home.  The State later redacted State's Exhibit 104 and replaced it with State's Exhibit 104B, which does not include Kali's reaction.  Her reaction was recorded on her own 911 call (State's Exhibit 105).

*Cooks v. State*, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 972 (1993).

Although evidence may be relevant in assessing punishment, a trial court may exclude the evidence under rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tex. R. Evid. 403; *see Rogers v. State*, 991 S.W.2d 263, 266–67 (Tex. Crim. App. 1999). "[V]irtually all evidence proffered by a party to a lawsuit will be prejudicial to the opposing party. . . . [O]nly 'unfair' prejudice provides the basis for exclusion of relevant evidence." *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990) (op. on original subm'n). In other words, evidence "is inadmissible [under rule 403] only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." *Erazo*, 144 S.W.3d at 491–92; *see also Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.— Fort Worth 2008, pet. ref'd) ("Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one.").

In conducting a rule 403 balancing test, several factors are significant: (1) the inherent probative force of the proffered evidence; (2) the proponent's need for that evidence; (3) any tendency of the evidence to promote a decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the

4

evidence; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832 (1997).

In reviewing the admissibility of evidence under rule 403, we will reverse the trial court only upon a clear abuse of discretion. *Rachal v. State*, 917 S.W.2d 799, 808 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996); *Montgomery*, 810 S.W.2d at 391–92 (op. on reh'g). A trial court does not abuse its discretion so long as its decision to admit or exclude evidence is, in view of all relevant facts, within the zone of reasonable disagreement. *Rachal*, 917 S.W.2d at 808; *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 975 (1993); *Montgomery*, 810 S.W.2d at 391–92 (op. on reh'g).

## B.  No Abuse of Discretion by Admitting Eric's and Kali's 911 Calls

The recording of Eric's 911 call includes four voices: Eric's, Patterson's, Elliott's, and the 911 operator's. The voices of Patterson and Elliott are indistinguishable from one another. The recording begins with Patterson, Elliott, or both of them demanding a bag from Eric to carry the items they were stealing. Eric first replied that he did not have a bag, but after the two men pressed him further, he said that he had a bag in his bedroom. A gunshot went off. Either Patterson or Elliott then yelled, "Oh, what the f[---]!" Both State's Exhibits 104A

(Eric's 911 call at a reduced speed) and 104B (Eric's 911 call in real time) are less than a minute long.

The recording of Kali's 911 call begins with her telling the 911 operator that she saw two men carrying laptops walk out of her house. While still on the phone, she returned to find Eric lying on the kitchen floor with a gunshot wound. Kali began screaming and crying. She told the 911 operator that Eric had been shot. A MedStar operator got on the line, and Kali explained Eric's condition to the operator. Kali attempted to give Eric CPR. State's Exhibit 105 (Kali's 911 call) was just under five minutes in length.

Although, as Patterson asserts, the recordings are emotionally charged and disturbing, they depict no more than the actual crime itself and the circumstances surrounding the crime. *See Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000); *cf. Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) ("[W]hen the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence."); *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). The recordings provided an illustration of the crime for which the jury was assessing punishment and informed the jury of the nature of the underlying incident so that it could tailor an appropriate punishment. *See Erazo*, 144 S.W.3d at 491–92; *Chamberlain*, 998 S.W.2d at 237; *see also York v. State*, 566 S.W.2d 936, 938 (Tex. Crim. App. [Panel Op.] 1978) (explaining that when

6

defendant enters guilty plea, testimony concerning circumstances of offense is admissible during punishment to "enable the jury to intelligently exercise the discretion which the law vests in them to assess the penalty").

Although the recordings may have an emotional impact on the listener and they were certainly prejudicial to Patterson, they were not unfairly prejudicial. *See Montgomery*, 810 S.W.2d at 378. *Compare Estrada v. State*, 313 S.W.3d 274, 300 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 905 (2011) (holding that 911 recording, in which emotional family members discovered victim's body, played during both guilt and punishment phases of trial was admissible because it provided a framework), *with Salazar v. State*, 90 S.W.3d 330, 338–39 (Tex. Crim. App. 2002) (holding that trial court abused its discretion by admitting a video montage during punishment phase that depicted adult victim as a youth and added background music that "greatly amplifie[d] the prejudicial effect"). The recordings were probative of the circumstances of the crime and of Patterson's personal responsibility and moral guilt, and their probative value was not outweighed by any emotional and prejudicial aspects. *See* Tex. R. Evid. 403; *Erazo*, 144 S.W.3d at 491–92; *see also Payne v. Tennessee*, 501 U.S. 808, 825, 111 S. Ct. 2597, 2608 (1991) ("[F]or the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant."). We hold that the trial court did not abuse its discretion by admitting State's Exhibits

104A, 104B, and 105, and we overrule Patterson's first and second issues. *See Rachal*, 917 S.W.2d at 808*; Montgomery*, 810 S.W.2d at 391–92*.*

#### IV. PATTERSON'S MOTION FOR MISTRIAL

In his third issue, Patterson complains that the trial court abused its discretion by denying his motion for mistrial after the State asked a witness a question that allegedly called for inadmissible hearsay shortly after the trial court had sustained an objection to that same line of questioning.

Allison Bass, a former classmate of Patterson's, testified for the State about a fight she had witnessed involving Patterson and a special education student, Brandon, at Southwest High School. Allison had previously given a statement about the fight to authorities. She explained at trial that Patterson hit Brandon, knocking him to the floor. Allison also testified that she did not want to testify in Patterson's trial and that Patterson had threatened to "kick [her] ass for snitching."

The State then called Allison's mother, Pam Bass, to testify. The State asked Pam if Allison had received threats after she provided her statement to authorities. Patterson's counsel objected to hearsay, which the trial court sustained. Moments later, the State returned to a similar line of questioning:

Q. You were worried about retaliation for [Allison]?

A. I was.

Q. Okay. And, in fact, when your daughter was subpoenaed to come and testify, it's fair to say[—]was she reluctant?

8

A. Yes.

Q. And was she fearful of coming in here and testifying?

A. She was.

Q. Okay. And outside of the courtroom, did she begin crying before she came in here?

A. Yes.

Q. And has your daughter—is your daughter worried about retaliation at school?

Patterson's counsel objected, stating that the court had just ruled on this line of questioning. The trial court sustained the objection and instructed the jury "to disregard the answer from the last question." Patterson's counsel then moved for a mistrial, arguing that the prosecutor intentionally violated the trial court's ruling. The trial court denied the motion. The State passed the witness without any further questioning.

## A. Law on Mistrials and Standard of Review

A mistrial is an extreme remedy for events occurring during the trial that are so prejudicial that expenditure of further time and expense would be wasteful. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000). The asking of an improper question will seldom require a mistrial because any harm can be cured by an instruction to disregard. *Grotti v. State*, 209 S.W.3d 747, 776 (Tex. App.—Fort Worth 2006) (citing *Ladd*, 3 S.W.3d at 567), *aff'd*, 273 S.W.3d 273 (Tex. Crim. App. 2008). Only when it is apparent that an objectionable event is so emotionally inflammatory that curative

9

instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant is a trial court required to grant a mistrial. *Id.* (citing *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004)); *West v. State*, 121 S.W.3d 95, 107 (Tex. App.—Fort Worth 2003, pet. ref'd).

We review the denial of a motion for mistrial under an abuse of discretion standard and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 3030 (2011); *Marchbanks v. State*, 341 S.W.3d 559, 561 (Tex. App.—Fort Worth 2011, no pet.). The determination of whether a given error necessitates a mistrial must be made by examining the complete record. *Ladd*, 3 S.W.3d at 567.

## B. No Abuse of Discretion by Denying Patterson's Motion for Mistrial

Allison testified, without objection, that she was hesitant to testify at trial because she thought Patterson might retaliate against her. Thus, when the State asked Pam whether Allison had been worried about retaliation as a consequence of her testimony, the question, at most, reinforced Allison's earlier testimony. Furthermore, Patterson's counsel made a timely objection before Pam answered the question, thereby limiting the ability of the State's question to unfairly impress the jury. *See Grotti*, 209 S.W.3d at 777 (categorizing the impact of the State's questioning as minimal when witness "did not have an opportunity to respond to the question, [defendant's] counsel objected immediately, and no further

10

questions . . . were asked in the presence of the jury"). Pam did not have an opportunity to respond to the State's question, and the trial court instructed the jury to disregard.[3]

We cannot say that the State's question to Pam was so emotionally inflammatory that it undermined the trial court's curative instruction and unfairly prejudiced Patterson. *See Grotti*, 209 S.W.3d at 777; *West*, 121 S.W.3d at 107; *see also Ladd*, 3 S.W.3d at 567. We hold that the trial court did not abuse its discretion by denying Patterson's motion for mistrial, and we overrule his third issue. *See Coble*, 330 S.W.3d at 292; *Marchbanks*, 341 S.W.3d at 561.

## V. CONCLUSION

Having overruled Patterson's three issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 13, 2013

---

[3]Patterson argues that the trial court's instruction to disregard was ineffective because it referred the jury to Pam's "answer," not the State's question. Nevertheless, the jury charge instructed the jury to consider only matters in evidence, and we presume the jury followed those instructions without evidence to the contrary. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

11