

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-198-CR

KENNETH EDWARD SANDERS                                          APPELLANT
A/K/A KENNETH EDWARDS SANDERS

V.

THE STATE OF TEXAS                                                  STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## **OPINION**

------------

### I. INTRODUCTION

A jury found Appellant Kenneth Edward Sanders guilty of three counts of aggravated sexual assault of a child and assessed his punishment at thirty years' confinement on each charge. The trial court sentenced Sanders consistent with the jury's findings and ordered the three sentences to run consecutively. In three points, Sanders contends that the trial court erred by (1) admitting evidence of an extraneous offense, (2) denying his request for a

limiting instruction, and (3) overruling his objection to the jury charge on punishment. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Sanders married D.S. At that time, D.S. had three young children—two girls and a boy. One of those children, D.G., is the complainant in this case and was ten years old when Sanders and her mother married. D.G. testified that Sanders forced her into a sexual relationship with him beginning when she was eleven years old and continuing for several years.

During the course of this relationship, D.G. said that Sanders would force her to engage either in sexual or oral intercourse with him every day or every other day. Additionally, when D.G. had sleepovers with her girlfriends, Sanders forced her to submit to and perform oral and sexual intercourse with him in front of her friends. D.G.'s girlfriends were all about D.G.'s age—ranging from eleven to thirteen years old. D.G. also testified that, on one occasion, Sanders bought drugs and, in lieu of money payment, allowed the drug dealer to force D.G. to have both sexual and oral intercourse with him.

The State additionally presented the testimony of two of D.G.'s girlfriends, who corroborated D.G.'s testimony regarding the forced intercourse with Sanders during the sleepovers. In his defense, Sanders denied all of D.G.'s allegations and claimed that D.G. was fabricating the story in retaliation

for Sanders's moving her and her family to a different Fort Worth suburb in late 2000.

After hearing the testimony of these and other witnesses, the jury found Sanders guilty of three counts of aggravated sexual assault of a child and assessed his punishment at thirty years' incarceration on each count. Sanders now appeals.

### III. ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

In his first point, Sanders complains that the trial court erred by allowing D.G.'s testimony that Sanders "gave" D.G. to his drug dealer and allowed the dealer to sexually abuse D.G. in lieu of money payment for the drugs. Such testimony, Sanders contends, was irrelevant, and, assuming that it was relevant, was extremely prejudicial and of little probative value. We address each argument in turn.

### A. Standard of Review for Relevance Determinations

Rule 404(b) embodies the established principle that a defendant is not to be tried for collateral crimes or for being a criminal generally. TEX. R. EVID. 404(b); *Nobles v. State,* 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); *Russell v. State*, 113 S.W.3d 530, 535 (Tex. App.—Fort Worth 2003, pet. ref'd); *Booker v. State*, 103 S.W.3d 521, 530 (Tex. App.—Fort Worth 2003, pet. ref'd) (op. on reh'g). Consequently, evidence of extraneous offenses is not

3

admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense. TEX. R. EVID. 404(b); *Russell*, 113 S.W.3d at 535; *Booker*, 103 S.W.3d at 529.

However, the Texas Legislature has determined that, notwithstanding rule 404, evidence of other crimes, wrongs, or acts committed by the defendant against a child under seventeen years old who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, such as the state of mind of the defendant and the child and the relationship of the defendant and the child before and after the offense. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp. 2007); *Dixon v. State*, 201 S.W.3d 731, 734–35 (Tex. Crim. App. 2006). Courts of appeals have therefore recognized that article 38.37, section 2 supersedes application of rule 402 and makes otherwise irrelevant evidence relevant. *Jones v. State*, 119 S.W.3d 412, 420 (Tex. App.—Fort Worth 2003, no pet.); *Hitt v. State*, 53 S.W.3d 697, 704–05 (Tex. App.—Austin 2001, pet. ref'd); *Walker v. State*, 4 S.W.3d 98, 102–03 (Tex. App.—Waco 1999, pet. ref'd); *Allred v. State*, No. 11-04-00026-CR, 2006 WL 1029083, at *2 (Tex. App.—Eastland Sept. 13, 2006, pet. ref'd) (not designated for publication). Even so, the State, as the proponent of extraneous offense evidence, nevertheless bears the burden of showing admissibility of the

evidence under article 38.37. *See Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g).

Rulings on relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001); *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App.), *cert. denied*, 510 U.S. 966 (1993). If the trial court's ruling was within the "zone of reasonable disagreement," then there is no abuse of discretion, and the appellate court must uphold the trial court's ruling. *Moreno*, 858 S.W.2d at 463; *Jones*, 119 S.W.3d at 419.

**B.    Relevance of D.G.'s Testimony**

During D.G.'s testimony, the State asked D.G. whether she knew an individual by the name of Ricky Sanders[1] and if anything unusual had happened with him. At that point, Sanders objected that the testimony the State was seeking to elicit was irrelevant. The trial court overruled the objection, at which point Sanders argued that the testimony was related to an extraneous offense and asked for a limiting instruction. The trial court, not knowing what D.G.

---

[1] Ricky Sanders is the cousin of Appellant Kenneth Edward Sanders and, to avoid confusion, will be referred to as "Ricky" hereinafter.

was going to say, excused the jury and conducted a brief hearing on the matter.

During the hearing, the State explained what D.G.'s testimony would be and argued that it was admissible under article 38.37, section 2 of the code of criminal procedure. Sanders responded that the prejudicial effect outweighed any probative value of the testimony. The trial court reviewed article 38.37 and determined that D.G.'s testimony about Ricky was admissible under section two of that article. The trial court then called the jury back in and gave the jury the following admonishment: "I am instructing you at this point that the following testimony is being admitted only for the purpose of showing the previous and subsequent relationship between the defendant and the child, if it does, and not for the purpose of showing a crime, if it does." In its charge at the guilt-innocence stage, the trial court likewise instructed the jury as follows:

> You are instructed that if there is any testimony before you in this case regarding the Defendant's having allegedly committed offenses[,] wrongs[,] or acts other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such offenses, if any were committed, and even then you may only consider the same in determining the motive, opportunity, intent, knowledge, [or] identity[] for this defendant now on trial before you, or to show the previous and subsequent relationship between the defendant and the child, if it does, and for no other purpose.

6

D.G. then testified that Sanders's cousin, Ricky, was a drug dealer and that Ricky sold methamphetamine to Sanders. On one occasion, Sanders either did not have the money to pay for the drugs or simply did not want to pay for the drugs. That afternoon, Sanders approached D.G. and told her that she would be spending the rest of the afternoon with Ricky. D.G. did not suspect anything, but Ricky took her back to his apartment and forced D.G. to engage in both oral and sexual intercourse with him. D.G. later learned that sex with her was Sanders's form of payment to Ricky for the methamphetamine.

On appeal, Sanders contends that because he was indicted for specific acts of sexual abuse against D.G., the incident with Ricky to settle a drug debt was completely irrelevant, as it did not tend to make any fact of consequence more or less probable than it would be without the evidence. The State argues, as it did at the trial level, that the testimony is relevant under article 38.37, section 2 of the code of criminal procedure as showing Sanders's and D.G.'s states of mind and their previous and subsequent relationship.

D.G.'s testimony concerning the events with Ricky was relevant in this case to demonstrate the unnatural attitude and relationship Sanders had developed toward D.G. *See Jones*, 119 S.W.3d at 420 (holding that evidence of the defendant's actions involving the child victim and third party children was relevant to show the defendant's state of mind and relationship with the

7

complainant); *Ernst v. State*, 971 S.W.2d 698, 700 (Tex. App.—Austin 1998, no pet.); *Comeaux v. State*, Nos. 14-03-01223-CR, 14-03-01224-CR, 14-03-01225-CR, 2005 WL 1149795, at *5 (Tex. App.—Houston [14th Dist.] May 17, 2005, pet. ref'd) (not designated for publication) (holding evidence that the defendant solicited a third party to have sex with the child victim was relevant to show the defendant's state of mind and his relationship with the victim). The testimony revealed Sanders's state of mind and relationship with D.G. by demonstrating that Sanders saw sex with D.G. as a tradable good that he took lightly.   Sanders's allowing an adult male to sexually abuse D.G. thus demonstrated his own state of mind and relationship with D.G.  Moreover, the trial court specifically instructed the jury not to consider the evidence for any purpose other than showing the states of mind and relationship between D.G. and Sanders.  *See Jones*, 119 S.W.3d at 420.

Therefore, considering article 38.37 and the evidence admitted at trial, we cannot say with confidence that the evidence of what happened with Ricky did not make it more probable that Sanders in fact had sexual relations with D.G. himself.  *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  Thus we hold that D.G.'s testimony concerning the events with Ricky was relevant.  *See Moreno*, 858 S.W.2d at 463.

**C.     Standard of Review for Rule 403 Determination**

Evidence that is relevant under article 38.37 is nevertheless subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. TEX. R. EVID. 403; *Hitt*, 53 S.W.3d at 706; *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd). Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery,* 810 S.W.2d at 389. Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. *Id.*

When a defendant makes a rule 403 objection, the trial court has a nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *Id.* In overruling such an objection, the trial court is assumed to have applied a rule 403 balancing test and determined the evidence was admissible. *See Poole*, 974 S.W.2d at 897; *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd); *Caballero v. State*, 919 S.W.2d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Rule 403 does not require that the trial court perform the balancing test on the record. *Poole*, 974 S.W.2d at 897; *Yates*, 941 S.W.2d at 367.

9

The trial court is given wide latitude to admit or exclude evidence of extraneous offenses. *See Montgomery*, 810 S.W.2d at 390; *Poole*, 974 S.W.2d at 897. A reviewing court must therefore recognize that the trial court is in a superior position to gauge the impact of the relevant evidence and not reverse a trial court's ruling if it is within the "zone of reasonable disagreement." *Mozon v. State,* 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Montgomery*, 810 S.W.2d at 391. In balancing probative value and unfair prejudice under rule 403, an appellate court presumes that the probative value will outweigh any prejudicial effect. *Montgomery,* 810 S.W.2d at 389. It is therefore the objecting party's burden to demonstrate that the probative value is substantially outweighed by the danger of unfair prejudice. *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Poole*, 974 S.W.2d at 897.

An appellate court must measure the trial court's balancing determination against the relevant criteria by which a rule 403 decision is made. *Mozon,* 991 S.W.2d at 847. The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact

committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. *Id*. (citing *Montgomery*, 810 S.W.2d at 389–90).

When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred by failing to exclude it. *Curtis v. State,* 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 392).

### D.    Rule 403 and D.G.'s Testimony

Sanders argues that the prejudicial effect of D.G.'s extraneous offense testimony involving Ricky far outweighed its probative value and that the trial court therefore erred by overruling his objection to it.[2]  Applying the rule 403

---

[2]  Because Sanders objected on specific grounds and the trial court overruled his objection, we assume that the trial court applied rule 403 and

balancing factors, we first examine how compellingly the extraneous act involving D.G. and Ricky shows Sanders's guilt in committing the charged offenses. *See Mozon*, 991 S.W.2d at 847. Here, the indictment charges Sanders with, on various occasions, intentionally or knowingly causing the penetration of D.G.'s female sexual organ by inserting his finger, tongue, and male sexual organ into her female sexual organ and of causing the penetration of D.G.'s mouth with his male sexual organ. Evidence that Sanders was willing to allow Ricky to sexually assault D.G. in the same manner in which Sanders was charged makes it more likely—but probably not compellingly likely—that he himself did the same thing to D.G.

Next, under the second and third factors, we examine the potential of the evidence to impress the jury in some irrational but nevertheless indelible way and the amount of time the State used in developing the evidence. *See id.* D.G.'s testimony about what Ricky did to her and Sanders's involvement may have inflamed the jury, but the incident with Ricky, although heinous, paled in comparison to D.G.'s graphic testimony about Sanders's repeated sexual assaults of her beginning when she was eleven years old and continuing for

---

determined that the probative value of the evidence was not substantially outweighed by any degree of unfair prejudice. *See Poole*, 974 S.W.2d at 897; *Yates*, 941 S.W.2d at 367.

several years. D.G.'s graphic testimony concerning Sanders's conduct overshadowed, by far, any inflammatory response the jury may have had to D.G.'s testimony concerning the events with Ricky. Furthermore, D.G.'s description of the incident with Ricky consisted of little more than one page in almost two hundred pages of testimony. Additionally, D.G.'s brief testimony about the incident with Ricky was followed by a specific limiting instruction from the trial court (which was almost as long as D.G.'s testimony about the incident) directing the jury to consider the evidence only inasmuch as it demonstrated the relationship between D.G. and Sanders. Consequently, here the extraneous act involving Ricky was not likely to create such prejudice in the minds of the jurors that they would be unable to consider the evidence for its proper purpose. *See id.*

Looking to the fourth factor, we determine the force of the State's need for D.G.'s testimony about the incident with Ricky. *See id.* The State possessed evidence and testimony concerning Sanders's direct acts against D.G. The State's need for the testimony was thus only slight. Beginning with the presumption that D.G.'s testimony about the incident with Ricky was more probative than prejudicial and evaluating it under the rule 403 factors, however, we cannot say that Sanders was unfairly prejudiced by D.G.'s testimony. *See id.*; *Montgomery*, 810 S.W.2d at 389. We therefore hold that the trial court did

13

not abuse its discretion by allowing D.G.'s testimony concerning the incident with Ricky.  *Mozon*, 991 S.W.2d at 847.

### E.    No Harm from Admitting D.G.'s Testimony

Alternatively, even if D.G.'s testimony about the incident with Ricky was more prejudicial than probative, her testimony on this point was nevertheless harmless.  *See Cockrell v. State*, 933 S.W.2d 73, 90 (Tex. Crim. App. 1996), *cert. denied,* 520 U.S. 1173 (1997) (conducting a harm analysis after determining that the trial court did not commit error).

In making this determination, we evaluate the admission of the extraneous offense evidence in the context of the entire record.  *See Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).  Here, the record reveals that the State spent very little time on the Ricky incident.  D.G.'s actual testimony on the issue took up a little over a page of the almost two-hundred-page record.  Furthermore, the State did not mention the incident at all in its opening statement and mentioned it only briefly in closing arguments, saying, "You may use as instructed in the Court's Charge, all the testimony, cousin Ricky, all the other part -- well, actually what I'm talking about is the stuff in Parker County.  You can use -- utilize that testimony in your evaluation, if you believe beyond a reasonable doubt that that occurred."  The State went on to focus solely on the testimony about the sexual acts that Sanders forced D.G.

14

to perform in front of and with her girlfriends. The State did not present any other witnesses who testified about the incident.

Considering the brief presentation of evidence about what Ricky did to D.G. and Sanders's involvement in the context of the entire record, we cannot say that the testimony substantially swayed or influenced the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)) (establishing that there is no harm upon the admission of evidence unless the admission had a substantial and injurious influence in determining the jury's verdict). Thus, even if the evidence of Sanders's trading sex with D.G. for drugs was more prejudicial than probative, it nevertheless would have been harmless error. Accordingly, we overrule Sanders's first point.

## IV. LIMITING INSTRUCTION

Sanders's second point is that the trial court erred by denying his request for a contemporaneous limiting instruction in connection with the admission of a different extraneous offense.

### A. When a Trial Court Must Give a Limiting Instruction

Under Texas Rule of Evidence 105(a),

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the

15

evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request [,] the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

TEX. R. EVID. 105(a).

The first opportunity to request a limiting instruction is when the testimony is initially admitted. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001). A limiting instruction on testimony about an extraneous offense, if requested, should be given when the evidence is admitted and then again in the final jury charge. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007); *Hammock*, 46 S.W.3d at 895. Giving the limiting instruction in the jury charge alone is insufficient because it is impossible for jurors to go back at the close of the trial and reassess the evidence in light of the limiting instruction, even if they could appreciate which items of evidence the instruction was supposed to apply to. *Hammock*, 46 S.W.3d at 895. This may result in the jury drawing inferences about the defendant's guilt based upon character conformity, a use of the evidence that was not contemplated by the trial court. *Delgado*, 235 S.W.3d at 251. The danger then becomes that the improper inference drawn cannot later be erased by an instruction in the charge. *Id.*

16

**B.    Necessity of a Limiting Instruction for D.G.'s Testimony**

In this case, the State sought to elicit testimony from D.G. about incidents that happened when two of her best friends, M.E. and A.S., both of whom were approximately D.G.'s age, spent the night at D.G.'s house.  The State established that these incidents occurred in Parker County.[3]  The following exchange then occurred:

> Q.    Did they [M.E. and A.S.] sometimes spend the night?
>
> A.    Yes.
>
> Q.    During this time was there something significant that started occurring?
>
> A.    When they started to stay the night [Sanders] would stay home more when my mom went out.  He started to buy wine coolers again.
>
> [SANDERS'S ATTORNEY]:    Your Honor, at this time we would object to this testimony, 401, 403 and 404, it's outside the jurisdiction of anything --

At that point, the trial court noted the hour and took a recess for lunch, saying that it would rule after the lunch break.  Before bringing the jury back in for the afternoon session, the following exchange took place:

---

[3] In 2000, the family moved from Tarrant County to Parker County. Sanders was indicted only for incidents that occurred in Tarrant County, before the move to Parker County.

THE COURT: Okay. I think the last thing that happened actually was the objection by [Sanders's attorney].

[STATE'S ATTORNEY]: The objection was to offenses alleged in Parker County, not in Tarrant County. He objected to those that the court didn't have jurisdiction on those, I believe that's right. Is that right, [Sanders's attorney]?

Sanders's attorney did not answer but engaged in a debate as to whether the State should respond in front of the jury. The State ultimately responded to Sanders's objection by saying, "Under 404(b) and 38.37 the [S]tate submits it's admissible." The trial court overruled Sanders's objection.

D.G. then testified that, after the family had moved from Tarrant County to Parker County, Sanders continued to sexually assault her in a variety of ways. Sanders "renew[ed] the objection" and sought a continuing objection to the testimony. D.G. then testified that one night, she had a sleepover at her house and invited M.E. and A.S. to stay the night. She said that Sanders provided wine coolers and marijuana to the twelve- and thirteen-year-old girls. Then, Sanders's attorney objected,

[SANDERS'S ATTORNEY]: Your Honor, we would again object at this point under 401, 403, and 404 for the reasons previously stated. We would ask for a limiting instruction at this point.

THE COURT: Okay. I'll overrule the objection.

[SANDERS'S ATTORNEY]: Request for a limiting instruction, you're overruling that as well?

18

THE COURT: I'll deny the request for a limiting instruction.

[SANDERS'S ATTORNEY]: So I don't have to object to each question, may I have a continuing objection to both of those and continuing request?

THE COURT: Okay.

D.G. then went on to testify that, during the sleepover, Sanders sexually assaulted her in front of M.E. and A.S. and had M.E. and A.S. also sexually assault her and each other. M.E. testified after D.G. and corroborated exactly what D.G. had said. Sanders never objected to M.E.'s testimony.

We need not decide whether the trial court erred by not giving the limiting instruction requested by Sanders. Sanders's running objection and request for a limiting instruction applied only to D.G.'s testimony. *See Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied*, 528 U.S.1026 (1999); *Scaggs v. State*, 18 S.W.3d 277, 292 (Tex. App.—Austin 2000, pet. ref'd) (noting that a running objection when requested by defense counsel and granted by the trial court does not preserve error when another witness testifies to the same matter without objection). But when the same evidence was later introduced through the matching testimony of M.E., Sanders did not object or request a limiting instruction.[4] Consequently, the issue raised by Sanders—that

---

[4] We note that Sanders's objections and parallel request for a limiting instruction were made under rules 401, 403, and 404 of the rules of evidence

19

the trial court erred by admitting and failing to give a limiting instruction concerning D.G.'s testimony about the group sex with A.S. and M.E.—is moot. *See Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999), *cert. denied,* 528 U.S. 1082 (2000) (commenting that it is well established that questions regarding the admission of evidence are rendered moot if the same evidence is elsewhere introduced without objection).

In other words, even if the trial court had erred by admitting D.G.'s testimony without a limiting instruction based on Sanders's 401, 403, and 404 objection, such an error was made harmless by M.E.'s testimony, which was offered for all purposes, without objection. *See id.*; *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) (holding that even if the trial court had erred by improperly admitting evidence, such error was harmless when the evidence was later introduced without objection); *Brown v. State*, 6 S.W.3d 571, 580 (Tex. App.—Tyler 1999, pet. ref'd) (stating that "[e]ven when inadmissible evidence is erroneously admitted, the error is cured when the same evidence is admitted without objection elsewhere at trial"). Accordingly, we overrule Sanders's second point.[5]

---

which would apply equally to M.E.'s testimony.

[5] The State argues that the evidence in this case was same transaction contextual evidence and that, therefore, no limiting instruction was required.

## V. ISSUANCE OF STATUTORILY MANDATED JURY CHARGE

In his third point, Sanders complains, as he did at trial, that the court's charge to the jury concerning the possibility of good conduct time denied him due process because the charge contained an incorrect statement of the law.

In crafting its charge to the jury at the punishment phase of trial, a trial court is bound to comply with the mandatory language of article 37.07, section 4 of the code of criminal procedure. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp. 2007). This article requires that in the trial court's instruction to the jury during the punishment phase, the trial court must inform the jury of the existence and mechanics of parole law and good conduct time. *Id.*

A person convicted of certain enumerated offenses, however, is not eligible for release on mandatory supervision, regardless of how much good time he might accrue; his good conduct time does not make him eligible for parole any sooner than he would be without the good conduct time credits. *See* TEX. GOV'T CODE ANN. § 508.149(a) (Vernon Supp. 2007); TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (e) (Vernon Supp. 2007); *Luquis v. State*, 72 S.W.3d 355, 362 (Tex. Crim. App. 2002).

---

We need not address this argument, however, in light of our holding that Sanders did not preserve his complaint concerning the denial of a rule 401, 403, or 404 limiting instruction concerning D.G.'s testimony because M.E.'s identical testimony was admitted for all purposes without objection.

21

Thus, in a case where the jury has found the defendant guilty of one of the offenses set forth in government code section 508.149(a), the portion of the statutorily mandated jury charge discussing good conduct time only marginally applies to that defendant. *See Luquis*, 72 S.W.3d at 362. This has led some defendants to argue that the jury instruction on good conduct time is a misstatement of the law as it applies to them and is therefore a violation of due process rights. *See id.* at 366 n.29.

In 2002, the court of criminal appeals took up the issue of whether article 37.07, section 4(a) of the code of criminal procedure was unconstitutional under the due course of law provisions of the Texas and United States Constitutions in that it required instructions on good conduct time that could mislead the jury in a case in which good conduct time did not affect parole eligibility or release date. *Id.* at 358. After a detailed examination of the legislative history of the statute and impact of the instruction on the defendant, the court of criminal appeals determined that the statute did not violate either constitutional provision. *Id.* at 365. We note that this court has similarly concluded that article 37.07, section 4(a) does not violate either due process provision. *See Cagle v. State*, 23 S.W.3d 590, 594 (Tex. App.—Fort Worth 2000, pet. ref'd).

In this case, Sanders was convicted of aggravated sexual assault of a child. This is one of the offenses included in the statute prohibiting release on

22

mandatory supervision. *See* TEX. GOV'T CODE ANN. § 508.149(a)(8). Therefore, good conduct time has little impact on when Sanders will be eligible for parole. *See Luquis*, 72 S.W.3d at 362. Nevertheless, the trial court included in its jury charge the mandatory language of article 37.07, section 4(a) in its totality, including the instruction on good conduct time. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4.

As discussed above, the court of criminal appeals has evaluated the very argument that Sanders presents and has determined that a jury charge like the one here does not violate a defendant's due process rights. *See Luquis*, 72 S.W.3d at 365. This court has similarly handed down a case that is directly on point and determined that a jury charge like the one here does not violate a defendant's due process rights. *See Cagle*, 23 S.W.3d at 594. Sanders himself admits in his brief to this court that "the Court of Criminal Appeals has directly addressed [the] issue raised herein and found no violation of due process in the jury charge authorized by statute." Accordingly, we overrule Sanders's third point.

## VI. CONCLUSION

Having overruled all three of Sanders's points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

23

PANEL F:    CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

PUBLISH

DELIVERED: May 8, 2008