**Affirmed and Opinion Filed July 6, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-17-00271-CR
_____

**CHRISTOPHER M. BURGESS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 439th Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 2-16-0489**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Whitehill
Opinion by Justice Francis

A jury convicted Christopher M. Burgess of the continuous sexual abuse of his pre-teen stepdaughter, L.D., and assessed punishment at life in prison. In four issues, appellant challenges the trial court's admission of evidence found on his computer of child and adult pornography and a document regarding sex and children. We affirm.

L.D.'s mother, Lashanda, met appellant in 2009 and the two subsequently moved in together at an apartment in Addison. A third person, Elizabeth Leistner, also lived with them. Leistner said appellant and Lashanda were nudists and went around the apartment semi-nude, but appellant generally would "throw something around his waist" for her benefit, such as a sarong.

In September 2010, L.D. was either visiting or living at the apartment. One day, Leistner came home from work earlier than usual. As she entered the apartment, appellant "darted off" to

his bedroom, which she said was not unusual because he was "almost always naked" when she got home. Leistner heard a noise coming from L.D.'s bedroom, went to check, and found L.D., who was naked and seemed "nervous" and a "little scared." L.D. was nine years old at the time. Leistner noticed appellant had set up a fort out of pillows and blankets in the living room, and it appeared she walked in on these two, who were naked, playing in a tent. She said it "struck" her as "very, very wrong." She confronted appellant about being naked with LD., and he "acted like there was absolutely nothing wrong with it," that it "was perfectly normal." Leistner told Lashanda, and the two of them agreed to kick appellant out of the apartment, which they did.

But, one month later, Lashanda and L.D. moved into a house in Rockwall with appellant, and Lashanda later married him. In May 2013, L.D. told her mother that appellant had been sexually abusing her. Lashanda confronted appellant, who denied the allegations and said L.D. was lying. Lashanda ordered him out of the house and notified the police. Appellant was indicted for continuous sexual abuse of a child. The specific conduct involved contact and penetration of L.D.'s anus with appellant's sexual organ and contact of L.D.'s sexual organ with appellant's sexual organ and mouth.

The trial was held almost four years later. By that time, L.D. was sixteen years old and her memory of the events was, as she said, "very foggy and hazy." L.D. testified appellant put baby oil on his penis and rubbed his penis on her vagina and between her "butt checks," but she said he did not "enter" her. She could not remember him putting his mouth on her vagina. L.D. said the abuse started at the apartment in Addison when she was nine years old, continued in Rockwall, and stopped right before her twelfth birthday. She told her mother a few months later. L.D. did not remember any details and only vaguely remembered talking with Lydia Connor, a forensic interviewer with the Collin County Child Advocacy Center, shortly after she made an outcry. She also had a limited memory of her upbringing, such as where she went to school at various ages,

staying with her grandparents, or how frequently she saw her mother after her parents divorced. She did not remember telling anyone her biological father touched her inappropriately or took naked pictures of her in the bathtub, although the evidence showed that a third party reported the allegations to CPS when L.D. was seven. (CPS determined the allegations were unfounded.)

Connor testified she interviewed L.D. in May 2013; L.D. was twelve years old. L.D. told her appellant put baby oil on his penis, put it in her "butt," and his body would "shake." L.D. also reported appellant rubbed his penis on her "private spot" and licked her "private spot," which L.D. said was "where she pees from." Appellant told her not to tell anyone.

Connor said when the interview started, LD., like most children, was sitting up and making eye contact. But, as the interview progressed and they began to talk about the specifics of what she had experienced, L.D. began covering her face with her hand and rubbing her head. Many of her responses were, "I don't know" and "I don't remember." Connor said she took this to mean that L.D. did not want to talk about it. Connor further explained there are "blocks to disclosure" for children, "things they experience that prevent them from wanting to talk about it." She believed L.D. was feeling shame and embarrassment and did not want to have to divulge "the things that happened to her," knowing someone would get in trouble and it would change her family's life.

Over appellant's objection, the trial court admitted fifteen images of child pornography found on appellant's computer and a document discussing whether "statutory rape" was "wrong." Appellant's issues on appeal all relate to the admission of this evidence. The trial court held a hearing outside the presence of the jury to determine the admissibility of this evidence under article 38.37 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2–a (West Supp. 2017). The hearing was held on the second day of trial before any witnesses testified.

At the hearing, Lashanda testified appellant left his computer at the house when she ordered him to leave. The computer was kept in their bedroom. She only used the computer with

appellant's permission and when he was present. According to Lashanda, appellant built the computer tower and used the Linus operating system primarily used by computer programmers. The computer was password-protected, but she knew appellant's password. About one week after L.D. made an outcry, Lashanda and a friend accessed the computer because Lashanda wanted to make sure no pictures of L.D. were on it. She discovered encrypted files that showed images primarily of "little girls," ranging in age from infancy to preteen, being molested by "grown men." She also saw adult videos, some depicting bestiality. Lashanda turned the computer over to the Rockwall Police Department.

Rockwall Detective Kevin Tilley, the investigating officer, obtained a search warrant and took the computer tower to the North Texas Regional Forensics Computer Lab in Dallas where the case was assigned to Don Wills, a senior forensics examiner with the FBI. Wills made a mirror-image copy of the hard drive and worked off that image copy. Wills found 568 images and 365 videos of "possible" child pornography, 198 videos of adult pornography involving bestiality and hundreds of other adult images and videos, and a text file listing "preteen" nude websites. Wills explained he could only say it was "possible" child pornography because he is "not allowed to definitively state" that the image depicts a child. Wills made a written report setting out his findings.

Tilley received the report and a disk containing photographs and videos of the pornography. Tilley spent two days reviewing the disk to determine if LD. was in any of them; she was not. He said the disk contained images of grown adults having oral, anal, and vaginal sex with children and children having sex with children. The children were infants to sixteen years old. Tilley selected fifteen images of child pornography that he believed represented what was depicted on the disk. A disk containing those fifteen images was admitted as evidence at the hearing.

Marya Wilkerson is an FBI special agent assigned to child exploitation matters and investigated a case against appellant for the United States Attorney's Office. As part of her investigation, Wilkerson had an image copy of appellant's computer provided to her by Wills. The child pornography was found in folders on top of folders on top of folders. When asked if the pornography was "buried" in the computer, Wilkerson said it would take "multiple openings" of folders to access it unless a shortcut was created. She also explained she was able to identify appellant as the user and owner of the computer by locating other documents that forensically linked him to the computer, such as mortgage documents, appellant's U.S. Army certification, and photographs of his wedding. She said that while the state case was pending, appellant pleaded guilty to a federal charge of possession of prepubescent child pornography and was sentenced to 180 months. Appellant was then returned to Rockwall for trial in this case.

In preparing for her testimony in this case, Wilkerson was reviewing her image copy of appellant's computer when she found a document called "For the Record. The document was in the same "folder structure" as the pornography and Wilkerson testified she did not see it during her federal investigation. The document questions whether "statutory rape" is "wrong" and asks whether a child is a pedophile if "they go after" an adult and what "happens" when "it is the adult that is raped" by a child or "taken advantage of" while drunk. The document concludes that forcing a child "is rape" but "if the child is willing it isn't as cut and dried as we might think . . . ." Wilkerson found the document on the first day of trial and, on the same day, notified the State. The State notified defense counsel the same day.

Appellant objected to the admission of this document because he said he had asked for such evidence "months and months ago" and thus had the "right to start over" with a forensic investigation to "confirm her assertions as to where this was found." The State responded the defense had an expert who was provided a "working copy" of the computer "just as [Wilkerson]

–5–

was." The State contended this expert had an equal opportunity to find the document. Defense counsel responded that while the trial court had ordered funds for the defense to hire a forensics examiner, a "full investigation" of the computer "would have been outside the budget." He asserted the trial court limited the expert's investigation of appellant's computer to the fifteen images of child pornography, but the State responded no such restriction was made. With respect to the child pornography, appellant objected in part that the images were more prejudicial than probative.

The trial court ruled the testimony and exhibits were admissible "if introduced under proper predicate." In ruling to allow the admission of the document, the trial court explained that "it's not going to take your expert that long - - ." But defense counsel said his expert was out of town and not available, so he needed a continuance "to get him on that." Defense counsel did not, however, indicate how long the expert would be out of town, how long it would take for him to make an assessment, or how long a continuance he needed. The trial court denied the request.

At trial, the fifteen still images of child pornography, Wills's report detailing the child and adult pornography found on the computer, a redacted version of the "For the Record document," and the federal court judgment in appellant's child pornography case were all admitted.[1] In addition, the witnesses gave essentially the same testimony at trial to explain this evidence.

---

[1] The redacted version of the document stated verbatim:

Another question to ask is "Is statutory rape wrong (as in a person under the age of 18 (internationally speaking if I'm not mistaken) with someone 18 or older. There is the three year dif rule of thumb but truly that is more an excuse often used. May hap pedophilia is put elsewhere but not in Deuteronomy where all the other sex laws (and many other) comes from but that has no true love for should not the child be given a more normal life? If a child figures out sex on their own and wants to try it where do we draw the line between experimentation and abusive behavior is the child a pedophile (think if the child has a certain age he, she, they go after or even if they stay within the three year dif)? Is there truly a difference with the child out grow such things or not do we wait for the kid to grow up or threat now and then how. If a child knows about sex and wants to ask some adult to show them stuff where does pedophilia begin and who is the perp. What happens when it is the adult that is raped forced into it tied down or taken advantage of wile drunk? or if only forced the first time and profunkterally black mailed or similar. Even if the adult did enjoy himself isn't it still rape of the adult but what would our legal system state (probably disbelief simple as that). Forcing a child is rape but if the child is willing it isn't as cut and dried as we might think certainly pubescent children are going to experiment some may even go after younger even prepubescent

There is no nor can there be a solid line strait line but it depends on the circumstances many would say one thing while others contradictory things.

In his first issue, appellant asserts the trial court abused its discretion in admitting the fifteen still images of child pornography. He argues the probative value of the pornographic images was outweighed by their prejudicial effect under Texas Rule of Evidence 403.

We review a trial court's ruling under rule 403 for an abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). The trial court's ruling must be upheld as long as it is in the zone of reasonable disagreement. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

Although extraneous offenses generally are inadmissible to prove character conformity under rule 404(b), such evidence is statutorily admissible for such purpose in prosecutions for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2; TEX. R. EVID. 404(b). Specifically, under article 38.37, section 2(b), in a prosecution for continuous sexual abuse of a child, the State may introduce evidence that the defendant possessed child pornography "for any bearing that evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). But even if extraneous offense evidence is relevant and admissible under article 38.37, it is subject to exclusion under rule 403. *See Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.— Fort Worth 2008, pet. ref'd).

Rule 403 allows for the exclusion of otherwise relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or consideration of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. We measure the trial court's ruling against the following balancing criteria: (1) the inherent probative force of the evidence along with (2) the State's need for the evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4)

any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

In reviewing the trial court's balancing test determination, we may reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1991). We are mindful the rule favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). And, it is appellant's burden to overcome this presumption and demonstrate that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or of misleading the jury. *Sanders*, 255 S.W.3d at 760.

Here, appellant failed to overcome the rule's presumption. We begin by acknowledging that sexually related bad acts and misconduct involving children are inherently inflammatory. *See Pawlak*, 420 S.W.3d at 809. Nevertheless, the trial court could have reasonably found the evidence's probative value and the State's need for the evidence were high. L.D.'s credibility was critical to the State's case. Because L.D. did not tell anyone about the abuse until months after it had stopped, there was no physical evidence to corroborate her story. Although Leistner appeared to interrupt appellant playing with L.D. while both were naked, L.D. did not make an outcry at that time. Appellant's attacks on L.D.'s credibility were a large part of the defense case. Beginning with opening statement, appellant accused L.D of having "a history of making false allegations," said her "testimony has changed and vacillated," and told jurors that "the hallmark of truth is consistency." At trial, he highlighted the inconsistencies in L.D.'s testimony and her failure to remember what she had reported or the details of the crimes she alleged. He also crossed L.D. and

other witnesses about "false allegations" made against L.D.'s biological father. Nevertheless, appellant argues the fifteen images have "little relationship" to the issue in this case because most of them do not depict an adult male and a female child of ten to eleven years old. But the images show appellant's sexual interest in children, and such an interest arguably makes it more likely he would commit crimes like those described at trial, regardless of whether each particular image portrays the particular scenario at issue here. *See Hicks v. State*, No. 09-15-00467-CR, 2017 WL 4182294, at *5 (Tex. App.—Beaumont Sept. 20, 2017, no pet.) (mem. op.) (not designated for publication).

To the extent he argues the State's need for the evidence was diminished by the fact his federal conviction was admitted into evidence, we cannot agree. The photographs provided some visual evidence of a small portion of what was found on his computer, something a copy of a judgment could not do. The State's presentation of the evidence did not take an inordinate amount of time. Three witnesses—Tilley, Wills, and Wilkerson—gave brief testimony on the subject during the course of a trial that lasted four days. We conclude factors one, two, and six weigh in favor of admission.

The remaining factors do not show that the probative value of the evidence was substantially outweighed by its prejudicial effect or by its tendency to mislead the jury. As stated earlier, evidence that appellant possessed child pornography was prejudicial, but not unfairly so. This case is unlike *Pawlak*, where thousands of pornographic images were admitted into evidence. 420 S.W.3d at 810. Here, the visual depictions were limited to fifteen. We see nothing in the record to indicate the evidence distracted the jury from the main issues in the case, suggested a decision on an improper basis, or was given undue weight because the jury was ill equipped to evaluate its probative force.

We conclude the trial court's determination that admission of the fifteen images was more probative than prejudicial is a decision that falls within the zone of reasonable disagreement. We therefore conclude the trial court did not abuse its discretion by admitting the evidence. *See Cox v. State*, 495 S.W.3d 898, 909 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd ) (concluding that admission of 2,000 images and videos of child pornography was not more prejudicial than probative in prosecution for aggravated sexual assault, failure to comply with sex offender registration requirements, and attempted solicitation of sexual performance of child). We overrule the first issue.

In his second issue, appellant contends the trial court reversibly erred by admitting evidence that he possessed adult pornography that included bestiality. He asserts this evidence was more prejudicial than probative and was admitted through Wills's written report, State's exhibit 4. In its brief, the State points out that two witnesses, Lashanda and Wills, testified without objection that appellant's computer contained adult videos that included bestiality. Any error in admitting evidence is cured where the same evidence comes in elsewhere without objection, either before or after the complained-of ruling. *Leday v.* State, 983 S.W. 713, 718 (Tex. Crim. App. 1998). At oral argument, appellant acknowledged the "necessary objections" were not made and conceded this issue. We overrule the second issue.

In his third and fourth issues, appellant challenges the admission of the "For the Record" document found on his computer by Wilkerson on the first day of trial. As best we can discern, appellant appears to make three complaints: (1) there was no evidence he created the document, (2) he was not provided timely notice of the document despite a request months earlier (3) he was denied additional time for his court-appointed expert to evaluate the evidence and respond.

We begin with appellant's complaint the State did not establish the exhibit was created by him and is therefore "unauthenticated hearsay." He asserts nothing in the actual wording of the document linked it to him.

If a trial court's ruling that a jury could reasonably find proffered evidence authentic is at least "within the zone of reasonable disagreement," a reviewing court should not interfere. *Tienda v. State*, 358 S.W.3d 633, 639 (Tex. Crim. App. 2012). Texas Rule of Evidence 901(a) defines authentication as a "condition precedent" to admissibility of evidence that requires the proponent to make a threshold showing that would be "sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). The ultimate question whether an item of evidence is what its proponent claims then becomes a question for the fact-finder—the jury in a jury trial. *Tienda*, 358 S.W.3d at 638. The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic. *Id.* Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge. *Id.*

While nothing in the "actual wording" of the document linked it to appellant, other testimony did. Lashanda testified appellant built and owned the computer. She was allowed to access it only in his presence. After she kicked appellant out of the house, she turned the computer over to the Rockwall police, who took it to a forensics lab for analysis. Wills was assigned the case. Wills made mirror image copies of the computer and gave a copy to Wilkerson. Wilkerson found the document, as well as a shorter version of it, along the path to the files containing the child pornography. Wilkerson also found other personal documents linking the computer to appellant, such as his U.S. Army certification, mortgage papers, and wedding photographs. We conclude the trial court could have determined that the State, as the proponent of the evidence,

supplied sufficient facts to support a reasonable jury determination that the proffered evidence was authentic. *See Tienda*, 358 S.W.3d at 638.

We next address appellant's complaint that the document should have been excluded because the State did not provide timely notice of its intent to use it. The State asserts appellant did not complain about "notice" below and, in fact, only mentioned "due process." For purposes of this opinion, we will presume appellant (1) complained about untimely notice and (2) did not receive timely notice.

In analyzing harm from a late notice under rule 404(b), we consider whether the error in admitting the evidence "had a substantial and injurious effect or influence in determining the jury's verdict." *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). In such a case, however, the influence or effect cannot have been "injurious" if the defendant was not surprised by the evidence. *Id*.

In *Hernandez*, the defendant primarily complained about the admission of his own audio-recorded statements to the police which contained multiple references to extraneous conduct. A copy of the tapes were given to appellant's counsel months before he made a rule 404(b) notice request. *Id*. at 825. Appellant argued that just because he knew about the extraneous acts did not mean he was given notice of the State's intent to use them. The court agreed, but said it "strains credulity" to think the defendant was not on notice that the State intended to use the recorded statements or that he had not prepared to defend against their use. *Id*. Additionally, the court stated the defendant failed to make any showing of how his defense strategy might have been different or how his defense was "injuriously" affected by the State's failure to provide reasonable notice. *Id*. As the court noted, "Surely, having been given the complete tape recordings, appellant's counsel listened to them and thus was in a position to develop evidence to mitigate their impact." *Id*.

Here, appellant argues in conclusory fashion that harm was shown by "the strength of the evidence" and his inability to "effectively respond." But the record shows defense counsel was provided a mirror-image of appellant's computer. Four months before trial, at appellant's request, the trial court approved $5,000 to secure an expert's assistance in the field of computer science in preparation of the defense's case. Contrary to appellant's assertions, the order did not limit the expert's scope. Thus, the defense had a copy of the computer and had the same opportunity to locate the document as did Wilkerson. As in *Hernandez*, appellant has made no showing of how his defense strategy would have been different or how his defense was "injuriously" affected by the State's lack of reasonable notice. We conclude appellant was not surprised by the evidence; accordingly, he has not been injuriously harmed by the late notice. We overrule the third issue.

In his fourth issue, appellant complains the trial court abused its discretion in denying him "a reasonable opportunity to respond and defend." Here, appellant suggests he was denied the right to an expert to help him prepare a defense to the evidence. But, as explained above, the trial court approved funds for appellant to hire an expert in computer science months previously and the defense had access to a mirror image of appellant's computer. The gist of appellant's complaint is the trial court improperly denied his oral request for a continuance so he would have additional time to conduct an investigation.

Under article 29.03 of the code of criminal procedure, "[a] criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006). Article 29.08 requires all motions for continuance to be sworn to by a person with knowledge of the facts relied upon for the continuance. *Id*. art. 29.08. Because of these procedural prerequisites, the court of criminal appeals has held that oral motions for continuance preserve

–13–

nothing for appellate review.  *See Dewberry v. State*, 4 S.W.3d 735, 755–56 (Tex. Crim. App. 1999).

Appellant does not dispute that he did not file a sworn, written motion.  Rather, citing this Court's opinion in *O'Rarden v. State*, 777 S.W.2d 455 (Tex. App.—Dallas 1989, pet. ref'd), appellant asserts a written motion is not required under article 29.13, which governs requests made after trial has begun.  In *O'Rarden*, we essentially recognized a due process exception to the preservation requirements governing continuance motions.  777 S.W.2d at 459–60.  The court of criminal appeals, however, has overruled *O'Rarden* by explicitly refusing to recognize a due process exception to the rule requiring motions for continuance to be written and sworn to be preserved on appeal.  *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012), citing *Anderson v. State*, 301 S.W.3d 276, 278–81 (Tex. Crim. App. 2009).  Because the motion in question was oral and not sworn, we conclude this issue was not properly preserved for appeal. We overrule the fourth issue.

We affirm the trial court's judgment.

/Molly Francis/
_____
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
170271F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER M. BURGESS, Appellant

No. 05-17-00271-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 439th Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 2-16-0489.
Opinion delivered by Justice Francis; Justices Fillmore and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 6, 2018.