

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00402-CR

———————————————————

DARRELL RAMON HAMPTON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1816888

---

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Darrell Ramon Hampton appeals his conviction for possessing with intent to deliver between 4 and 200 grams of fentanyl. *See* Tex. Health & Safety Code Ann. § 481.1123(d). In a single issue, Hampton contends that the trial court abused its discretion by admitting certain extraneous-offense evidence over his Rule 403 objection. *See* Tex. R. Evid. 403. We will affirm.

## II. BACKGROUND

In April 2022, Fort Worth Police Department officers were dispatched to a convenience store where officers with the city's Realtime Crime Center Surveillance Unit had been monitoring a parked car without license plates that was believed to be the same vehicle whose driver had fled an attempted police stop earlier the same day. The monitoring officers had observed the driver holding a bag of blue pills and had seen multiple men enter and exit the passenger seat.

Officer Claudia Alfaro was among the patrol officers who responded to the scene. She approached the parked car from behind with her gun drawn and arrested Hampton immediately after he complied with her command to exit the vehicle. Officers searched the vehicle and found (1) a bag containing a large quantity of blue

pills, which were later tested and confirmed to be fentanyl;[1] (2) 3.935 grams of black-tar heroin; (3) 19.92 grams of other heroin; and (4) a single oxycodone pill.

Hampton was charged with possessing with the intent to deliver between 4 and 200 grams of fentanyl. *See* Tex. Health & Safety Code Ann. § 481.1123(d). He pleaded not guilty, and a jury trial was held.

At trial, the only disputed issue was whether Hampton intended to deliver the fentanyl or whether he possessed it solely for his own personal use. Because Hampton's cross-examination of Officer Alfaro had placed the offense's intent element at issue, the State sought permission to present evidence of another instance in which Hampton had been arrested for selling fentanyl out of a vehicle.[2] Hampton objected on Rule 403 grounds, but the trial court overruled his objection and allowed the State to present evidence concerning the second arrest.

Based on this ruling, Officer William Snow testified that in February 2024, officers had arrested Hampton after conducting surveillance on a gas station known to be a fentanyl-dealing location.[3] Officers had observed two known fentanyl users

---

[1]Forensic testing on a sample of 43 pills revealed the presence of fentanyl in each tablet with a total weight of 4.487 grams. The weight of the remaining untested pills was 45.310 grams.

[2]*See* Tex. R. Evid. 404(b)(2) (providing that evidence of crimes or other bad acts "may be admissible" to prove intent).

[3]In addition to Officer Snow's testimony, the State presented surveillance pole-camera video of the extraneous offense.

approaching a car without license plates and speaking to the driver, whom the officers ultimately identified as Hampton. After the two fentanyl users departed Hampton's car, officers detained them and found a single fentanyl pill on one of them. The officers then arrested Hampton, who possessed a large amount of cash but no contraband.

After considering all the evidence, the jury found Hampton guilty. Following a punishment hearing, the trial court sentenced him to thirty years in prison. This appeal ensued.

### III. DISCUSSION

In his sole issue, Hampton contends that the trial court abused its discretion by admitting evidence of his February 2024 arrest over his Rule 403 objection. We disagree.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court

4

gave the wrong reason for its correct ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

**B. Rule 403**

Even if evidence is relevant, it can still be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the evidence's probative value. *McNeil v. State*, 398 S.W.3d 747, 756 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also* Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication)). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403— including unfair prejudice. *James*, 623 S.W.3d at 547; *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The

Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

## C. Analysis

Applying the *Gigliobianco* factors, *see id.*, we cannot say that the trial court abused its discretion by admitting evidence of Hampton's February 2024 arrest.

First, because the February 2024 extraneous offense was very similar to the charged offense, the complained-of evidence's inherent probative force was very strong. *See Hill v. State*, No. 11-13-00069-CR, 2015 WL 252316, at *7 (Tex. App.—Eastland Jan. 15, 2015, pet. ref'd) (mem. op., not designated for publication) (recognizing that one of the "important measures of probative force" is "the presence of similarities between the charged and the extraneous offense" (first citing *Montgomery*, 810 S.W.2d at 390; and then citing *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985))). In both instances, officers had observed Hampton engaging in behavior consistent with conducting narcotics transactions out of a

6

vehicle. Hampton asserts that the extraneous offense was not probative because it was temporally remote, but we cannot conclude that the approximately two-year gap between the two offenses was sufficiently long to deplete the extraneous offense's probative force. *See Parlin v. State*, 591 S.W.3d 214, 224 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (noting that "courts have found that even long lapses in time do not deplete the probative value of the evidence" and collecting cases allowing evidence of extraneous offenses from thirteen years, four to seven years, and twenty-six months before the charged offense); *see also Tejeda v. State*, No. 01-23-00472-CR, 2025 WL 1033764, at *10 (Tex. App.—Houston [1st Dist.] Apr. 8, 2025, no pet.) (mem. op., not designated for publication) (holding that evidence of an extraneous choking attack that occurred "about two years" before the charged murder offense was not so remote in time as to render it inadmissible under Rule 403).

Second, because Hampton placed the intent element at issue, the State had a strong need for the extraneous-offense evidence. Intent is inherently difficult to prove with direct evidence, *see Fowler v. State*, No. 02-17-00154-CR, 2018 WL 4781570, at *4 (Tex. App.—Fort Worth Oct. 4, 2018, pet. ref'd) (mem. op., not designated for publication), and the fact that Hampton had been arrested for engaging in illegal narcotics transactions after the date of his charged offense was circumstantial evidence of his intent, *see Lewis v. State*, No. 03-01-00512-CR, 2002 WL 1723778, at *4 (Tex. App.—Austin July 26, 2002, pet. ref'd) (not designated for publication) (holding that "the fact that appellant possessed similarly large amounts of

7

methamphetamine . . . before and after the date of the charged offense" was some evidence of his intent to deliver the methamphetamine he possessed on the date of the charged offense); *cf. Mason v. State*, 99 S.W.3d 652, 656 (Tex. App.—Eastland 2003, pet. ref'd) (holding that trial court did not abuse its discretion by finding that extraneous-offense evidence of appellant's selling crack cocaine in 2001 was admissible as circumstantial evidence of appellant's knowing possession of cocaine in 1999). And in his briefing, Hampton himself posits that "the State's remaining evidence on the intent-to-deliver element was, at best, minimal." Thus, considering the first two *Gigliobianco* factors, we conclude that the extraneous-offense evidence's probative value was very high. *See Gigliobianco*, 210 S.W.3d at 641–42.

Turning to the remaining *Gigliobianco* factors, we conclude that Hampton has failed to show that the extraneous-offense evidence's high probative value was substantially outweighed by any of the dangers listed in Rule 403. *See James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760. Because the extraneous offense was similar in nature and seriousness to the charged offense, the extraneous-offense evidence was not unfairly prejudicial.[4] *See Norwood v. State*, No. 03-

---

[4]Hampton asserts that Officer Snow's testimony was unfairly prejudicial because he "testified abundantly about the history of fentanyl, its deadly effect on local youth," the fact that "it was the 'most addictive drug' he had seen," and its being the cause of many overdoses in the area. But Hampton did not object to any of this testimony, which concerned how Officer Snow became familiar with fentanyl trafficking. And Hampton's earlier Rule 403 objection went only to Officer Snow's testimony concerning Hampton's February 2024 arrest, not his testimony regarding fentanyl trafficking in general or its effect on the local community. Accordingly,

13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) ("When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice."); *see also Gigliobianco*, 210 S.W.3d at 641 (clarifying that unfair prejudice "refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one"). And because the evidence was not scientific or technical in nature, there was little risk that the jury would confuse the issues or give the evidence undue weight.[5] *See Gigliobianco*, 210 S.W.3d at 641 (providing scientific evidence as an example of the type of evidence that "might mislead a jury that is not properly equipped to judge" its "probative force"). Further, while Officer Snow's testimony consumed approximately twenty percent of the nearly 100-page reporter's record from the one-day guilt–innocence

Hampton failed to preserve any complaint regarding this testimony. *See* Tex. R. App. P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009); *see also Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020) (recognizing that "a contemporaneous objection must be made to preserve error for appeal"). Thus, the testimony's purported prejudicial impact does not factor into our Rule 403 analysis.

[5]The trial court's jury charge contained a limiting instruction clarifying that the jury could only consider the extraneous-offense evidence "in determining the intent of [Hampton,] if any, in connection with the offense . . . alleged against him in the indictment in this case, and for no other purpose." This instruction reduced the already-low risk of jury confusion. *See Landaverde v. State*, Nos. 05-19-00175-CR, 05-19-00176-CR, 2020 WL 2897108, at *7–8 (Tex. App.—Dallas June 3, 2020, pet. ref'd) (mem. op., not designated for publication) (holding that trial court's limiting instructions lessened extraneous-offense evidence's tendency to suggest a decision on an improper basis, to confuse or distract the jury from the main issues, or "to leave the jury ill-equipped to evaluate its probative force").

9

phase of Hampton's trial, the presentation of the extraneous-offense evidence was not needlessly cumulative, nor did it cause undue delay. Thus, this factor weighs only slightly, if at all, against the evidence's admission. *See Foster v. State*, No. 02-22-00109-CR, 2023 WL 4780566, at *5 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op., not designated for publication).

Having considered all the relevant factors, we cannot conclude that any of the dangers listed in Rule 403—including unfair prejudice—substantially outweighed the extraneous-offense evidence's high probative value, *see Gigliobianco*, 210 S.W.3d at 642, much less that the trial court's decision to admit this evidence was outside the zone of reasonable disagreement, *see Zuliani*, 97 S.W.3d at 595. Accordingly, we overrule Hampton's sole issue.

## IV. CONCLUSION

Having overruled Hampton's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 21, 2025